FRANK O'BRIEN v. THE AMERICAN DREDGING COMPANY.

A master will not be liable to a servant in his employ for injuries occasioned by the negligence of a superior servant, who is also employed as a boss or foreman of other workmen with whom he labors, in the execution of work designed and directed by the master or his vice principal.

On rule to show cause.

Plaintiff's action was brought to recover damages for an injury received by him by reason of his foot having been drawn into the machinery of a steam dredge, whereon he was employed as a "deck hand." The dredge was owned by defendant, and was, at the time, used in dredging the James river, near Richmond, under a contract with the United States government.

The machinery had stopped because the chain had jumped from the drum, and plaintiff took a position which exposed him to the injury if the machinery moved.

The evidence was conflicting whether plaintiff had been ordered to take that position by one Cannon, who was called "captain" of the dredge.

The machinery was set in motion by Cannon and caused plaintiff's injury.

It was matter of contest upon the evidence whether Cannon or other workmen gave notice to plaintiff of the danger of his position, or of the proposed movement of the machinery.

There was a verdict for plaintiff, and this rule was granted.

Argued at November Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the rule, *M. P. Grey.*

*Contra, Howard Carrow.*

The opinion of the court was delivered by

MAGIE, J.   One of the reasons assigned in support of this rule is based on the contention that Cannon, whose act occasioned the injury of plaintiff, was a fellow-servant of plaintiff, and that their common employer, the defendant, is not liable for Cannon's negligence (if his act was negligent), unless it appears that defendant did not exercise proper care in employing him, or in retaining him in its employ, of which there was no proof.

The general rule, that servants employed by or under the control of the same master, in a common employment, obviously exposing them to injury from the negligence of others so employed or controlled, although engaged in different departments of the common business, are fellow-servants who assume the risk of each other's negligence, and cannot have recourse to the master for any injury resulting therefrom, as announced and established in a series of cases in our courts

(*Harrison* v. *Central R. R. Co.*, 2 *Vroom* 293; *Paulmier* v. *Erie R. R. Co.*, 5 *Id.* 151; *McAndrews* v. *Burns*, 10 *Id.* 117; *Ewan* v. *Lippincott*, 18 *Id.* 192; *Rogers Locomotive Works* v. *Hand*, 21 *Id.* 464), is not brought in question, but its correctness is conceded by plaintiff's counsel.

On the other hand, it is also conceded that a master may employ and put in his place a representative, for whose negligence occasioning injury to a servant, also in his employ, he will be liable. The rule thus conceded has been applied by our courts only in the case of *Smith* v. *Oxford Iron Co.*, 13 *Vroom* 467. The question there was, whether an incorporated company was liable to an injured servant whose injury was occasioned by the neglect of its president. The case showed that the superintendence of the business of the company had been committed to its president. He introduced the use of a highly dangerous explosive without instructing the workmen directed to use it in respect to its dangerous qualities. This court held that under such circumstances a duty devolved on the company to give notice of the qualities of the explosive, a failure to perform which would be negligence, and that, having entrusted to its chief executive officer the superintendence of its business, it became his duty to give the required information, and his failure or neglect in that respect was imputable to the company and rendered it liable to its servant injured in the use of the explosive. The superintendent of the business was thus held to be, in respect to this duty owed by the company to its servants, a representative of the company, whose negligence was its negligence.

The question to be solved in the case before us concerns the relation between the defendant company on the one hand and Cannon and the plaintiff on the other hand, and the rule to be applied in respect to plaintiff's injury, if occasioned by the negligence of Cannon in the relation to the common employer disclosed by the evidence. If that relation comes within the doctrine of Smith *v.* Oxford Iron Co., defendant's liability will be settled; if, however, the relation is different from that then considered, it must be next determined whether it comes

O'Brien v. American Dredging Co. *53 N. J. L.*

within the principles of that case, or whether, upon that or other principle, the liability of defendant is shown.

In determining the relation of the parties, we are bound to assume as proved whatever the jury was warranted in finding from the evidence to sustain plaintiff's action.

Thus considered, the evidence establishes the following, viz.: that defendant is an incorporated company engaged in the business of dredging by steam dredges; that Albertson is the general superintendent of the company, having power to direct where the dredges are to operate, to supervise the employment of workmen and to discharge them; that the steam dredge, whereon plaintiff's injury was received, was directed to be worked in the James river, near Richmond, under a contract with the United States, the control of government engineers and the supervision of an inspector stationed thereon; that Cannon, who was called "captain" of the dredge, was authorized to employ men to work on it, subject to the approval of the general superintendent, who had power to disapprove and discharge them; that the duty of the captain was to operate the dredge in said dredging; that plaintiff was employed by Cannon as a "deck hand" on the dredge, and his duty was to aid in the operation of the dredge, and that Cannon had charge of the men so employed and they were under him.

From this it is obvious that the case in hand does not present the same features as that of Smith *v.* Oxford Iron Co. The relation which its president and superintendent bore to that company is here paralleled by the relation of Albertson to the defendant. While Cannon was entrusted with some authority to employ workmen, yet, in respect to the operation of the dredge in the prosecution of defendant's business, he was not a general superintendent, but a mere foreman of the gang of workmen engaged with them in the execution of the master's work. He was a superior and they were inferior workmen, but all were employed in a common operation, though in different grades of service.

Does the principle on which that case was decided, or do correct principles, fix a liability on the master under the circumstances of this case?

·˙ The rule laid down in that case is based on the proposition that the chief executive officer of an incorporated company, to whom it has committed the superintendence of its business, is, in respect to duties owed to its workmen, its representative.

This proposition accords with that announced by the text writers on this subject, viz., that when a master commits the entire charge of his business to another, retaining no oversight and exercising no discretion of his own, the latter becomes, in respect to the duties of the master to the workmen in his employ, an *alter ego,* or vice principal of the master, who is liable for his negligence. *Shearm. & R. Neg.,* § 102; 2 *Thomp. Neg., n.* 1038, § 34; *Whart. Neg.,* § 229.

Since a corporation must, in general, act by agents, it is evident that when it becomes an employer of men there will exist some agent, who, in respect to its duties to the employed, will be the representative of the company. While, however, it may be necessary for such corporations to act in these respects by agents, the relation between them and such agents will be identical with that between an individual employer and such agents voluntarily employed, and the rules governing the relation will be alike.

It may be that a master, whether an individual or a corporation, in the conduct of an extensive business, may so commit the charge of distinct departments of the common work to different agents that each may represent the master within that department. It may also be that a master may employ one in a dual relation, so that in some respects he may represent his master and in other respects be a mere workman.

But neither of these propositions need now be pronounced upon, for neither is directly involved in the case.

When we examine the adjudged cases involving the application of the rule I have mentioned, and attempting to draw

the line between the relation which will constitute an employe the representative of his master and that which will make him a fellow-workman with others, we are confronted with a variety of irreconcilable decisions, evincing a positive opposition of views, between courts administering the same system of laws.

In one line of cases, the mere fact that one servant is endowed with a superior grade of service over others who are subordinated to him, is deemed to establish his position as a representative and vice principal of the master.

Such is the view taken in Ohio, *Berea Stone Co.* v. *Kraft*, 31 *Ohio St.* 287, and cases therein collected; in Illinois, over dissent, *Chicago and Alton R. R. Co.* v. *May*, 108 *Ill.* 288; in Missouri, *Cook* v. *Hannibal, &c., R. R. Co.*, 63 *Mo.* 397; in Tennessee, *Louisville, &c., R. R. Co.* v. *Bowler*, 9 *Heisk.* 866, and in Michigan, *Chicago, &c., R. R. Co.* v. *Bayfield*, 37 *Mich.* 205.

So, in the Supreme Court of the United States, it was held, by a divided court, that a conductor of a railroad train, who had a right to command the movements of the train and to control those employed on it, was not a fellow-servant with such employes, but a representative of the company, for whose negligence it was liable. *Chicago and Milwaukee R. R. Co.* v. *Ross*, 112 *U. S.* 377.

On the other hand, there is a line of well considered cases which repudiate this doctrine, and hold that a servant, employed as a foreman with other workmen, is not, in respect to such employment, a vice principal, but only a fellow-workman.

A "mining boss" or "driving boss," who were under a general superintendent of a mine, were held, in Pennsylvania, to be fellow-servants of those working with and under them. *Lehigh Valley Coal Co.* v. *Jones*, 86 *Penna. St.* 432. A like principle will be found to underlie the decisions in *Ruse* v. *Biddle*, 112 *Id.* 72; *New York, Lake Erie and Western R. R. Co.* v. *Bell, Id.* 400; *Waddell* v. *Simonson, Id.* 567, and *Lewis* v. *Seifert*, 116 *Id.* 626..

A like view is expressed in the courts of New York. *Brick* v. *Rochester, &c., R. R. Co.,* 98 *N. Y.* 211; *McCosker* v. *Long Island R. R. Co.,* 84 *Id.* 77; *Crispin* v. *Babbitt,* 81 *Id.* 516; *Malone* v. *Hathaway,* 64 *Id.* 5; *Hussey* v. *Coger,* 112 *Id.* 614, and *Loughlin* v. *State,* 105 *Id.* 159. In the last cited case, *Chicago and Milwaukee R. R. Co.* v. *Ross, supra,* was disapproved.

Cases in Massachusetts, some of which carry still further the limitation of the master's liability, are collected in *Throop Dig., tit. "Master and Servant,"* II., 2, § 56.

The following English cases are in the same line: *Murphy* v. *Smith,* 19 *C. B., N. S.,* 361; *Feltham* v. *England,* 2 *L. R., Q. B.* 33, and *Wilson* v. *Merry,* 1 *L. R., S. & D. App.* 326.

In the absence of authority in this state, we are at liberty to adopt that view which is most consonant with the reason for denying the liability of a master to a servant for injuries received by the negligence of a fellow-servant.

That liability is denied by the law, because the servant is presumed to have entered upon his contract of service with knowledge that he would be exposed to risk from such negligence, and to have required proper compensation therefor in the wages agreed upon.

The exemption from liability which the law thus raises out of the contractual relation of master and servant, does not, of course, extend to the liability of the master for his own negligence, or for negligence which may be contemplated as his. So, if a master superintend and manage his own business, he will plainly be liable for an injury to a servant resulting from his own negligence; and if he withdraw from the superintendence and management of his business and substitute in his place another, he will be equally liable for the negligence of his vice principal.

Whether the master retain the superintendence and management of his business, or withdraws himself from it and devolves it on a vice principal or representative, it is quite apparent that, although the master or his representative may devise the plans, engage the workmen, provide the machinery

and tools and direct the performance of work, neither can, as a general rule, be continually present at the execution of all such work. It is the necessary consequence that the mere execution of the planned work must be entrusted to workmen, and, where necessary, to groups or gangs of workmen, and in such case that one should be selected as the leader, boss or foreman, to see to the execution of such work. This sort of superiority of service is so essential and so universal that every workman, in entering upon a contract of service, must contemplate its being made use of in a proper case. He therefore makes his contract of service in contemplation of the risk of injury from the negligence of a boss or foreman, as well as from the negligence of another fellow-workman. The foreman or superior servant stands to him, in that respect, in the precise position of his other fellow-servants.

Although the question here presented was not involved in Smith *v.* Oxford Iron Co., Mr. Justice Van Syckel treated it as settled by the weight of authority that, to exempt the master from liability, the negligent servant need not be on a parity of service with the injured servant.

My conclusion is, that the fact of superiority in grade of service is not a conclusive test in determining the liability of the master. That liability will arise when the negligent employe has been put in the place the master would otherwise occupy, but it will not arise when the negligent employe is a mere boss or foreman in the prosecution of the master's work, such as the master, if controlling and managing his own business, would necessarily employ, and such as a contracting workman would contemplate being employed.

The result is, that the verdict in this case cannot be sustained.

The trial judge left to the jury the determination whether the act of Cannon, which caused plaintiff's injury, was done by Cannon as a representative of defendant, or as a fellow-servant of plaintiff.

But it was clear, upon the evidence, that Cannon's act was not within the scope of his agency as representative of defend-

ant. If any such agency existed, it was limited to the em-' ployment of men in defendant's service. But the act fell within his authority as foreman of the men on the dredge in the prosecution of work for the master in which all were em-- ployed, and in respect to which Cannon was a fellow-servant. Therefore, there should have been a non-suit, or a direction for a verdict for defendant.

The rule to show cause must be made absolute.