*32 Vroom.*           . Olsen v. Nixon.

KNUTE OLSEN, PLAINTIFF IN ERROR, v. LEWIS NIXON,
DEFENDANT IN ERROR.

The plaintiff was injured by the fall of a scaffold erected by his fellow-
laborers, engaged with him in the common employment of the defend-
ant as shipcarpenters, about the hull of a ferryboat upon which they
were working. The fall was the result of negligent construction. At
the close of plaintiff's case the latter was nonsuited. *Held*—

1. That the negligence complained of being the negligence of a fellow-
servant, and there being no proof of faulty materials or negligence in
selecting the workmen, the master was not liable and plaintiff could
not recover.

2. The fact that there was a foreman, who gave directions, did not
alter or modify the application of this rule, because it appeared that
the foreman did not represent the master as his agent or middleman
exclusively, but was at work with the others in the common employ-
ment of the master.

3. The operation of the rule stated was not altered by the evidence
tending to prove that plaintiff did not enter the service of the master
until after the negligent act complained of, it appearing that plaintiff
had worked in the yard a short time before, and in other shipyards,
and knew that the erection of the scaffold and the shifting of it in the
progress of the work, both in this and the other yards, was a duty
which devolved upon the shipcarpenters under their contract of ser-
vice with the master.

[*Argued March 7th,* 1898 ; *decided June 20th,* 1898.]

On error to the Supreme Court.

For the plaintiff in error, *John T. Dunn.*

For the defendant in error, *Edwin A. S. Lewis.*

The opinion of the court was delivered by

HENDRICKSON, J.   The question raised under this writ
is as to the legality of the action of the trial judge at the
Union Circuit in granting a nonsuit at the close of the
plaintiff's case.

The plaintiff in error brought suit in that court against the
defendant in error to recover damages for injuries sustained

by the former as the result of a fall from a scaffold erected in the defendant's shipyard at Elizabethport, about the hull of a ferryboat then in course of construction.

The accident appears to have occurred by the giving way of a cross-piece nailed to two upright poles, that bore one end of the planks, used for the scaffold, because of negligent construction. The scaffolding extended all around the boat and was built in the manner indicated. The plaintiff, with several others, was on this part of the scaffold, engaged in moving the planks around from one side of the boat to the other, when it gave way under the strain and plaintiff fell. The defendant insisted, as a ground for nonsuit, that the accident was caused by the negligence of a fellow-servant, for which the defendant, as the common master, could not be held.

The proofs offered by plaintiff tended to show that the plaintiff was a shipcarpenter, and as such was employed, at tne time of his fall, with other servants of the defendant—shipcarpenters, platers and riveters—in the work of construction; that the defendant had not undertaken to furnish the scaffold or supervise its construction, but that the erection of the scaffold and the adjusting of it to the needs of the work by elevating it or lowering the planking as the work progressed was a part of the service exacted of the carpenters by the defendant, and which they were accustomed to perform in the regular line of their duty; that there was a foreman in charge of the work at the time, who was also a shipcarpenter engaged with the others in the common employment, and that these facts were known to the plaintiff at the time of the accident.

There was no proof that the defendant had furnished improper materials or that he had been in any way negligent in the selection of the shipcarpenters or others so employed.

The natural sequence from these facts, with the law applied, would seem to be that a case had arisen which was within the exception to the general rule of the master's liability for the negligence of his servant, and that the doctrine

of the negligence of fellow-servant was applicable. Such is the recognized doctrine in this and other jurisdictions. The case of *Mayer* v. *McGrath*, 29 *Vroom* 469, seems to be distinctly in point and to be scarcely distinguishable from the present case. It was a suit for injuries received by a fall from a scaffold built by the fellow-workmen of the plaintiff about the building on which they were at work, caused by the giving way of one of the bearers supporting the planks, as a result of negligent construction. The present Chief Justice delivered the opinion of the Supreme Court in that case, enunciating and sustaining the principle to which I have just alluded.

For further recognition of this doctrine see 1 *Shearm. & R. Neg.* (5th ed.) 234; *Beach Con. Neg.* 98; 7 *Am. & Eng. Encycl. L.* 821; *Whart. Neg.* 224.

Nor is the operation of this rule modified or interfered with on the ground that the work upon the boat was being done under the direction of a foreman acting as a vice principal.

The general doctrine that the master is to be held liable for injury to his servants through the negligence of an agent or middleman, under whose absolute control he places them, has no application to this case. There was, indeed, a foreman, but the evidence is that, as a shipcarpenter, he was engaged in the common employment with the other servants. When this is so, then the foreman is not a vice principal, but a fellow-servant with the others, and for his negligent acts the master is not responsible. *O'Brien* v. *Dredging Co.*, 24 *Vroom* 291; *Steamship Co.* v. *Ingebregsten*, 28 *Id.* 400; *Maher* v. *Thropp*, 30 *Id.* 186; *McLaughlin* v. *Camden Iron Works*, 31 *Vroom* 557; *Northern Pacific Railroad Co.* v. *Peterson*, 162 *U. S.* 346; 16 *Sup. Ct.* 843.

But the plaintiff in error does not, as I understand it, deny the doctrines here stated nor their general application to the facts of the pending case. He insists, however, that under the evidence it appears that the negligent construction which caused the injury took place before the plaintiff entered into his contract of employment with defendant, and that he cannot

be held to have assumed the risk of hidden dangers caused by the antecedent negligence of other servants of the defendant.

So far as the scaffold poles are concerned, they may have been erected before the plaintiff's service began, for it appears that they are not so often replaced as are the cross-pieces for the planks to rest on.

But the plaintiff's service had continued for two and one-half months, with the exception of a short interval while he was laid off, and he had been continuously at work on the boat for two weeks preceding the accident. It also clearly appears that the fall was not due to any fault of the poles, but was caused through the negligent nailing of one of the cross-pieces.

With regard to this part of the work, the plaintiff testified that in all his long service in this and other shipyards, both in this country and in Europe, it had been the custom and duty of the shipcarpenters employed in them to erect scaffold poles and shift up and down the cross-pieces, so as to make the scaffold higher or lower as the work on the boats required ; that he had seen the shipcarpenters around this boat shift the scaffold a great many times, and had himself assisted in this work on two occasions, and that such work was the general work of the shipcarpenter.

Just when this negligent construction occurred, whether during plaintiff's immediate service or before that time, is not material so far as the question of defendant's own responsibility is concerned, if plaintiff knew or ought to have known that the scaffold which fell had been erected not by or under the supervision of the master, but as part of the work of those who, as fellow-servants, were engaged in the common employment of the defendant in his shipyard.

That this was the fact admits of no question, and that plaintiff knew this fact or should have known it when he renewed his service, is equally clear.

The principle underlying this exemption of the master from responsibility from negligent injuries of a fellow-servant, arises from the fact that one who enters into such a service assumes

all the ordinary risks that are common to it, which include the risks from the negligent acts of his fellow-workmen therein, and is supposed to fix his rate of wages to be paid by the master on the basis of such risks.

This was such a risk as plaintiff must have known he was assuming when he again renewed his relation as a servant with the defendant, and hence the reasonableness of the application of the rule to the plaintiff, though his service may not have been concurrent with the negligence complained of.

The result thus reached will be found, I think, in harmony with the decisions.

The case of *Arkerson* v. *Dennison*, 117 *Mass.* 407, has been cited by counsel of the plaintiff as one directly in point and as supporting the view thus advanced by him. While that case arose out of an injury to plaintiff, caused by a fall from staging on which he was at work repairing a building, and it appears that the staging was built before the plaintiff began work, by persons who were afterwards his fellow-workmen, the decision does not seem to support the contention of the plaintiff in error.

The court held that the judge erred in directing a verdict for the defendant, but the opinion nowhere bases its ruling on the fact that the staging was built before the plaintiff began work.

On the contrary, the error pointed out is that the judge had excluded evidence tending to show that the defendant had retained the charge and direction of the building of the staging himself, and had thereby taken from the jury the question of negligent supervision on the part of the defendant, which should have been submitted to them. This case, in fact, tells against, rather than in favor, of the point it was cited to sustain.

While there are many cases in which the doctrine of negligence of fellow-servant has been applied, although the neglect had occurred prior to the employment of the party injured, as in *Killea* v. *Faxon*, 125 *Mass.* 485, this exact point has been seldom raised in the discussions.

In the case of *Hogan* v. *Smith,* 125 *N. Y.* 774, however, the New York Court of Appeals affirmed the Supreme Court in reversing a judgment for plaintiff on a verdict which does deal quite directly with the point that has been raised here.

In that case a longshoreman was injured while loading a vessel, from the defective building of a "stool" formed by the laying of plank in the square of the hatch, above the hold of the vessel, and the piling of bags of flour thereon, on which the workmen stood to receive the flour lowered to them in slings, and then delivered by them to others, who stowed it away. It was customary for the longshoremen to extend the planks upon which the "stool" was constructed to some distance outside of it, but that precaution had been omitted, and the deceased was struck by one of the descending loads and killed by falling into the hold. It was held that the master, having furnished proper planks and bags of flour for the purpose, it became the duty of the servants, as part of their work, to erect the "stool," and not the duty of the master. It seems to have been insisted, among other contentions, that the deceased having commenced his labor after the "stool" had been built, and without knowledge of the omitted plank and the consequent probability of danger, the right of action for causing his death could not be defeated by the negligence of fellow-servants.

Upon this point the opinion holds that the establishment of these facts would simply tend to free the deceased from the charge of contributory negligence, but would not alter the relation of the master to the servants and their work; that the neglect was a continuing one; that it became such as to Hogan when he began his work, and that the duty to close the opening by laying additional plank was that of the servant and not of the master.

This statement of the law is practically in accord with the rule as I have endeavored to define it.

The result is that, in my judgment, the plaintiff was properly nonsuited, and I will therefore vote to affirm.

*For affirmance*—THE CHANCELLOR, COLLINS, DEPUE, DIXON, GARRISON, GUMMERE, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON, VREDENBURGH. 12.

*For reversal*—LIPPINCOTT, LUDLOW. 2.