MICHAEL CURLEY, PLAINTIFF IN ERROR, v. HENRY HOFF, DEFENDANT IN ERROR.

Argued November 22, 1898—Decided March 6, 1899.

1. The rule of duty, for a master to use reasonable care that the place of working of his servants shall be kept safe, is not fully applicable in a case where the work itself involves the place of working. In such a case the duty extends only to the use of reasonable care to discover and give notice of latent danger. The case of *Van Steenburgh* v. *Thornton,* 29 *Vroom* 160, explained and distinguished.

2. The rule that a master is not liable for injury resulting to a servant from the negligence of fellow-servants in the same common employment, if such servants are selected with reasonable care, is applicable to the construction, under one foreman, of a road with a brick sewer therein. In such a case the bricklayers who build the sewer are in a common employment with the laborers who excavate and sheathe the trench and with the foreman who directs the whole work.

On error to the Supreme Court.

For the plaintiff in error, *Charles L. Corbin.*

For the defendant in error, *Warren Dixon.*

The opinion of the court was delivered by

COLLINS, J. This writ of error brings before us exceptions to rulings made at the trial of an action, brought by a servant against his master, to recover damages for personal injuries sustained in the service; in which action the plaintiff prevailed.

The defendant was engaged in constructing, for the county of Hudson, a public road with a brick sewer therein. At the time the plaintiff was hurt the different branches of the work were in simultaneous progress under one foreman. As the trench for the sewer was excavated it was sheathed with planks held in place by rangers braced laterally across it. As it deepened these planks were driven down farther. Some rock was encountered and this had to be removed by blasting. The plaintiff was one of two bricklayers engaged in building the sewer, following up the workmen engaged in making the trench. Shortly after a blast of rock, made at a point about a hundred feet in advance of the bricklayers, the lower part of the bank on one side of the trench caved in upon, and injured, the plaintiff as he stooped to his work. At this place the sheathing had not been driven down to the bottom of the trench by some two or three feet and there was more or less percolation of water, so that the first course of the sewer was being laid in mud. The fall of earth seems to have been due

to the action of the water aided perhaps by the jar of the blast.
The learned judge who tried the cause refused to nonsuit the
plaintiff.   He instructed the jury that it is the duty of a
master to exercise reasonable care to provide for his servant a
safe place in which to work and to keep it safe, and that he
cannot delegate that duty so as to relieve himself of liability.
This rule he said was subject to the qualification that the ser-
vant must assume the risk of obvious or incidental dangers,
and of his own negligence.

In applying the rule to the case in hand, the judge in-
structed the jury that a delegation of such duty to the fore-
man, would render his negligence imputable to the defendant;
and on the assumption that it was the duty of the defendant
to afford some protection against the caving in of the trench,
and that he had undertaken to perform that duty by means of
sheathing, the judge further instructed the jury that it was
the duty of the defendant to exercise " reasonable care in the
construction of that sheathing, so as to make that place, so far
as reasonable care could make it, a safe place for the workman
to engage in his labor."   Exceptions duly sealed present these
rulings for review.

The general rule stated to the jury is well established.
Recent assertions of it in this court are to be found in the
cases of *Comben* v. *Belleville Stone Co.*, 30 *Vroom* 226, and
*Belleville Stone Co.* v. *Mooney*, 32 *Id.* 253.   Its application,
however, often presents difficulty.   Where the work and place
of working are coincident it seems to have little appropriate-
ness.   It is hard to see how, for example, where the work is
excavation, the master is under any duty to guard his ser-
vants against the very danger that arises from their work.
The opinion read for this court in the case of *Van Steenburgh*
v. *Thornton*, 29 *Id.* 160, seems to assert such a duty, but such
is not the force of the *decision*, as was pointed out in the
Supreme Court in the later case of *Regan* v. *Palo, ante*
*p.* 30, where it was held that a servant takes the risk of
the caving in of the walls of a trench he is digging unless
there be a latent danger which the master with reasonable

care might have discovered. The facts recited in the report of the Van Steenburgh case show that there was such a latent danger, knowledge of which was chargeable to the master, and therefore this court refused to disturb a verdict against him. The learned judge who delivered the opinion considered the case as one of duty to provide a safe place in which to work; but it is plain that the real duty neglected was the discovery of a latent danger. Had the plaintiff, in that case, been told of the buried water-pipe, the presence of which made it unsafe to dig near it, he would have proceeded with the work at his own risk. The case was parallel to one decided at the same term where the principle was declared that a master is bound "to use reasonable care to protect his servant from unnecessary risk and is liable for damages occasioned to him through some latent danger of which he should have warned him." *Western Union Telegraph Co.* v. *McMullen,* 29 *Id.* 155. The declaration in the Van Steenburgh opinion that the master was bound by the negligence of the boss foreman was really without pertinence. The record then before the court shows that there was evidence sufficient to warrant the jury in finding that the master himself knew or ought to have known of the latent danger. His contract with the township bound him to protect water-pipes and a public map on file disclosed the existence of the water-pipe that constituted the danger. This point was made in the brief filed in support of the judgment. The only exceptions on which error was assigned were to the refusal to nonsuit or direct a verdict for the defendant. Hence nothing was really decided beyond what those exceptions necessarily involved.

Coming to a case where sheathing of a sewer trench is necessary or desirable the rule of the master's duty to provide a safe place for working seems as little appropriate. The sheathing is a part of the work, and, where the earth is soft or friable, a necessary part, for without it there can be no trench. There should be no difference between the rule governing the construction of a sewer and that governing the construction of

any other work. The trench, sheathed or unsheathed, is a necessary part of such construction.

Another general rule as well established as that under discussion, is that a master who has used due care in the selection and employment of his servants is not responsible for an injury done to one of them by the carelessness of another in the course of their common employment. The courts of this state have inflexibly adhered to this rule since its first formal assertion in *Harrison* v. *Central Railroad Co.*, 2 *Vroom* 293. It is as applicable to a case where the work involves the place of working as to any other. It has been properly applied by the Supreme Court in *Gilmore* v. *Oxford Iron Co.*, 26 *Id.* 39, to a case of alleged negligent failure by a foreman to remove from the walls of a mine, in which the plaintiff was drilling holes for blasting, fragments of ore that had been loosened by previous blasts, one of which fragments fell upon and injured the miner; and in *Maher* v. *McGrath*, 29 *Id.* 469, to alleged negligent construction, by masons, of a scafford, for their work, which fell with and injured a laborer delivering upon it brick for the wall being built by the masons. This court itself has unanimously applied it to the alleged negligent construction by ship carpenters of a scaffold necessary for the building of a vessel, where the scaffold fell and injured another carpenter standing upon it at work. *Olsen* v. *Nixon*, 32 *Vroom* 671. The rule must be equally applicable to negligence in sheathing the sides of a sewer trench, there being, as in this case, no allegation or proof of carelessness in the selection or employment of servants, or that the foreman or workmen were in fact incompetent.

The decision in *Steamship Co.* v. *Ingebregsten*, 28 *Vroom* 400, does not conflict with the views above expressed. That decision related to mechanical appliances, not a place of working; but the rule of the master's duty is the same in both cases, viz., a reasonable care for the servant's safety. While delegation to others will not relieve the master from the consequences of negligence in the performance of what the law makes the master's duty, it will not charge upon the master

the consequences of the negligence of his servants toward each other. The risk of that negligence, for reasons of public policy, the law places on the servants. The test always must be whether the negligent act or omission was in discharge of the master's or the servant's duty. *Smith* v. *Oxford Iron Co.*, 13 *Id.* 467. In the Ingebregsten case it was acknowledged that inspection incidental to use of a tool or appliance was the servant's not the master's duty; so in the case in hand the keeping safe a place of working incidental to the work itself was the servant's not the master's duty.

This distinction is well illustrated by a decision of the New York Court of Appeals. A laborer was employed in breaking out and loading lumps of clay. The clay bank overhung him, but was safe as long as it was undisturbed. In the progress of the work the foreman weakened the cohesion of the bank above the laborer and it fell upon and injured him. It was held that the master was not liable. *Loughlin* v. *New York*, 105 *N. Y.* 159. In a leading case in England it was decided that while the owners of a mine were bound to use reasonable care to provide a proper system of ventilation, so as to prevent accumulation of fire-damp, they were not responsible for the negligence of their underground manager in obstructing the free working of the system by a scaffold set up to reach a coal seam. *Wilson* v. *Merry*, L. R., 1 *H. L. Sc.* 326. In this case Lord Chelmsford's opinion is very convincing both as to the distinction drawn and as to the manager being a fellow-servant with the miners. A well-considered opinion of the same purport is that of Chief Justice Gray in *Holden* v. *Fitchburg Railroad Co.*, 129 *Mass.* 268.

Of course a master must use reasonable care to furnish sufficient and suitable materials for what is essential to a given piece of work, but when he performs that duty a failure to use them or negligence in their use is not chargeable to him. *McLaughlin* v. *Camden Iron Works*, 31 *Vroom* 557. In the later case of *Day* v. *Donahue, ante p.* 380, where a bricklayer was injured through the falling of a scaffold, sub-

mission to the jury of the servant's claim against the master was justified because the put-log that broke was defective and unfit for the use for which he had furnished it. In the case now before us the proximate cause of the injury was the neglect to drive down the sheathing planks to the bottom of the trench, or, perhaps, the placing the planks too far apart. There was no lack or inadequacy of materials for sheathing and bracing; the fault, if any, was entirely with the servants engaged in the work and not with the master. The foreman in this regard was a fellow-servant with the plaintiff. *O'Brien* v. *American Dredging Co.*, 24 *Vroom* 291; *Gilmore* v. *Oxford Iron Co.*, *ubi supra; Maher* v. *Thropp*, 30 *Vroom* 186; *McLaughlin* v. *Camden Iron Works, ubi supra; Olsen* v. *Nixon, ubi supra; Loughlin* v. *New York, ubi supra; Wilson* v. *Merry, ubi supra.*

The only question possible to raise in this case is as to whether the plaintiff, in laying the sewer, was in a common employment with the workmen who did the sheathing. I can conceive of cases where a servant following up work of other servants of the same master may be injured through the result of their negligence and yet have a remedy against the master for neglect of duty to use reasonable care to provide a safe place for working. No general rule can be formulated that will fit every case. A jury question may perhaps arise on that subject. In this case the trial judge treated the question as a legal one and I think decided it wrongly. A bricklayer building a sewer as the excavation and sheathing of the trench proceed is unquestionably engaged in a common employment with the workmen constructing the trench. The contract for road and sewer was an entirety, and all the men worked together for the common design. In *Olsen* v. *Nixon, ubi supra,* the servant injured was employed after the scaffold that broke was constructed, yet he was held to have been in the common employment and without remedy.

There was, therefore, error in putting the case to the jury as one in which it was possible to find a breach of the

master's duty or one in which the foreman's negligence was imputable to the master; but even if this were not so the plaintiff should, nevertheless, have been barred of recovery for the reason that the undisputed facts brought him within the conceded qualification of the rule invoked, .viz., that the servant assumes all obvious risks. The plaintiff knew better than anyone that the sheathing at the place where he was working had not been driven down, and if, as was claimed by some witnesses, the planks were not close to one another, he also knew that fact. His work was at the very bottom of the trench and he was experienced in the work. One of his witnesses was the county's inspector, and he testified that the bracing, as he called it, was done upon consultation with the plaintiff. The plaintiff knew of the percolation of water, for he laid his bricks in the mud. He knew, of course, that blasting was in progress, for it was frequent, and the custom was to give warning to leave the trench when the blast was fired, in order to avoid danger from the flying rock. At the blast, just before the accident, the usual warning was given, and although defendant's witnesses said that the plaintiff disregarded the warning and remained at work, he himself testified that he left the trench and returned after the explosion, and was just resuming his work when the bank fell or slid upon him. He further testified that, according to his custom, he looked at the bank as he passed down into the trench after the explosion, and that it looked all right.

He therefore deliberately assumed the risk of remaining at work.

There must be a reversal and a *venire de novo.*

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 13.