CHARLES R. SMITH, DEFENDANT IN ERROR, v. THE ERIE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 19, 1902—Decided June 16, 1902.

1. As between a railroad company and such of its employes as are required, in the performance of their duties, to travel upon its trains, the company is bound to exercise reasonable care to so construct and maintain the track and roadbed as to make them reasonably safe for such travel.

2. For the negligence of the trackmen, charged with the inspection and repair of the tracks and roadbed, where such negligence causes injury to a trainman traveling thereon, the railroad company is responsible.

3. The master's duty to exercise reasonable care in furnishing a place for the work, and appliances for the work, that shall be reasonably safe for those engaged in the general employment is not fully discharged by the employment of competent agents for its performance. Those servants to whom the duty is delegated are not fellow-servants engaged in a common employment with those for whose reasonable safety the duty is imposed upon the master.

4. A servant has the right to take it for granted that his master has performed his duty by exercising reasonable care for the servant's safety in the respects above indicated, until the servant is warned or notified of a danger arising from the master's negligence, or until the danger becomes so obvious that a reasonably prudent servant, under the circumstances, would observe it.

5. The risk of injury from a defect in a railroad track or roadbed negligently permitted to remain in bad repair, is not among the ordinary and natural risks that are assumed by a trainman, and is not assumed unless it becomes known to him or is so obvious that by the exercise of ordinary care on his part it would be observed.

---

On error to the Supreme Court.

For the plaintiff in error, *Cortlandt Parker* and *Cortlandt Parker, Jr.*

For the defendant in error, *W. Bradford Smith* and *Robert H. McCarter.*

The opinion of the court was delivered by

PITNEY, J. At the time of the occurrence which gave rise to this action plaintiff was in the employ of the defendant, in the capacity of baggage master and acting brakeman, and in the performance of his duties was traveling upon one of defendant's passenger cars over the Greenwood Lake branch of its railroad. This car, together with a locomotive and tender, made up the train. The occurrence took place on the evening of Saturday, January 14th, 1899, shortly after seven o'clock. The train was running at some speed, down a grade of about sixty feet to the mile, when, in rounding a curve, the passen-

ger car became derailed, and, after bumping for some distance over the cross-ties, broke away from the tender and was thrown down a steep embankment and demolished. The plaintiff sustained serious personal injuries, to recover damages for which he brought this action. The verdict and judgment in the court below having gone•in his favor, the defendant now asks for a reversal because of alleged errors committed by the trial judge.

Plaintiff's insistment at the trial was that the derailment was occasioned. by the non-repair of the track. Evidence was introduced tending to show that the inspection and repairs of this part of the railroad were customarily done by a section gang, of which one Duffy was foreman and Sloat and two others were members; that during this particular week the section gang worked only on the alternate days; that at least as early as the afternoon of Friday, the day before the accident, a noticeable depression (called by the witnesses a "low joint" or "low spot") was found in the outer rail of the track at or near the curve in question; that this depression was observable by a person walking the track, and was sufficient to cause a decided lurch in a car passing over it; that on Friday afternoon Sloat reported this "low joint" to Duffy, yet the section gang was laid off duty from Friday night until Monday morning. Duffy, the track foreman, was called as a witness by the plaintiff, and testified that he was at work on Saturday, the 14th, but that his men were not, they having been laid off by him on the orders of Mr. Lynch, the supervisor of that division; that none of the trackmen were on duty on the 14th, except Duffy himself, and that he walked over the section twice that day, but did nothing towards the repair of the low point in question; it being conceded that he could not repair it without help.

The plaintiff also produced the printed book of rules of defendant company, from which he introduced in evidence, without objection, the following rules:

"*Supervisors.*—The supervisor has charge of the repairmen and other laborers employed on his subdivision, and must see that they perform their duties properly, and discipline them

for neglect of duty. It is the supervisor's duty to keep the track, roadbed, bridges, culverts, buildings and other property of the company on his subdivision in repair. He must pass over his subdivision daily; observe the condition of the track and bridges; see that the proper slopes and ditches are preserved; * * * that ties are of standard size, evenly spaced and properly tamped, and that the rails are in proper surface and securely fastened; * * * and do everything necessary to secure the safety of the road."

"*Track foremen.*—Track foremen report to and receive their instructions from the supervisor. They have charge of repairs on their respective sections, and are responsible for the proper inspection and safety of the tracks, bridges and culverts. They must see that the track is in good line and surface and properly spiked; that it is in true and uniform gauge; that the cross-ties are properly spaced, lined and tamped; that the roadbed is in good order," &c.

Upon this evidence, and other to the same effect, the plaintiff claimed that the proximate cause of the accident was the bad condition of the track; that the defect was such that reasonable vigilance and proper inspection would have discovered it, and reasonable care required its reparation; and that, in fact, it was discovered by the trackmen in ample time to enable them to mend it before the accident, so that there was negligence of the trackmen, for which the defendant was responsible to the plaintiff.

Defendant's insistment was that the low spot in the track was not the cause of the derailment of the car, and that the disaster was the result of the reckless speed of the train, for which the locomotive engineer, a fellow-servant of the plaintiff, was responsible. With respect to the speed of the train the testimony was quite variant. There was evidence from which the jury would have been at liberty to believe that it was not exceeding twenty miles an hour, and other evidence from which they might believe its speed was far in excess of thirty miles per hour.

It was claimed by the defendant that the low spot was sixty feet or more above the point where the wheels of the passenger

car left the track, it being argued that this distance of itself demonstrated that the low spot did not cause the derailment. It was further insisted that, in a derailment resulting from such a low spot, the wheels would jump over the outer rail, whereas in this case several lengths of the outer rail rolled over under pressure of the wheels, thereby causing a spreading of the track and permiting the wheels to settle down upon the cross-ties.

As corroborating the defendant's theory, and negativing the theory which attributed the derailment to the "low joint," it was pointed out that the locomotive remained on the track and that the tender remained attached to the locomotive, although the rear wheels of the tender left the track. It is also claimed that after the passenger car became derailed, it remained attached to the tender, and that its wheels bumped along the cross-ties for a distance of over two hundred feet before the car broke from the tender and pitched down the bank.

From all this it is argued that the occurrence resulted, not from the car leaving the track by reason of roughness, unevenness or any "low joint," but by the locomotive and cars remaining on the track, clinging to it and destroying it.

But the evidence tends to show that the "low joint" indicated that the track was being heaved by the frost, and so it cannot be said to be a necessary conclusion that the weakness of the track was confined to the immediate vicinity of the "low joint." Nor can it be said that a derailment which occurs by the overturning of the rails, caused by the weight of a train consisting of a locomotive, a tender and a single car, driven at a speed less than that which would cause them to jump the track, necessarily excludes the notion that the rails spread by reason of the non-repair of the tracks.

There were motions for nonsuit and for direction of a verdict for the defendant. The refusal of these motions raises the questions on which the principal stress was laid in the argument before this court.

The motions were based, in part, on the ground "that the accident was due to the negligence of a fellow-servant of the

plaintiff." As we have already seen, there was evidence from which the jury had a right to infer that the occurrence was due to negligent non-repair of the track, and not to excessive speed of the train. Therefore the question is raised whether the employes whose duty it was to inspect and repair the track were fellow-servants of the plaintiff, engaged in a common employment with him, within the meaning of the rule that absolves the master from liability to a servant for the consequences of a fellow-servant's negligence.

It is entirely clear that, as between a railroad company and such of its employes as are required, in the performance of their duties, to travel upon its trains, the company is bound to exercise reasonable care to so construct and maintain the tracks and roadbed as to make them reasonably safe for the purposes of such travel. So far as the trainmen are concerned, the tracks and roadbed come within the familiar rule that imposes on the master the duty of taking ordinary care that the places in which, and the appliances with which, the servant is required to work shall be reasonably safe for the purpose.

The cases of *Harrison* v. *Central Railroad Co.,* 2 *Vroom* 293, and *Paulmier, Administrator,* v. *Erie Railroad Co.,* 5 *Id.* 151, are instances in which the Supreme Court asserted the master's liability where the supports of the track were insecure, and the master had notice thereof. The recent decisions of this court furnish numerous illustrations of the general principle. Among them are *Mills* v. *Maine Ice Co.,* 22 *Id.* 342; *Steamship Co.* v. *Ingebregsten,* 28 *Id.* 400; *Western Union Telegraph Co.* v. *McMullen,* 29 *Id.* 155; *Van Steenburgh* v. *Thornton, Id.* 160; *Day* v. *Donohue,* 33 *Id.* 380; *Cole* v. *Warren Manufacturing Co.,* 34 *Id.* 626. In each of these cases the employer was held liable by reason of some neglect of the duty in question.

The defendant's insistment involves the proposition that the men in charge of the inspection and repair of the track were fellow-servants of the plaintiff, so that, for the consequences of their negligence, he cannot recover against the common employer. This contention cannot prevail. It is

true that in Harrison v. Central Railroad Co., where the imputed negligence was the failure to repair a railroad bridge known to be unsafe for want of repair, in consequence of which the bridge broke down under the weight of a train, thereby causing the death of a brakeman upon the train, the late Chief Justice Beasley said, in substance, that if the company had, in fact, directed its agents, possessed of competent skill, to examine, at stated periods, the bridge in question, and they had reported it secure, the plaintiff could not recover, even if the agents making such report had acted carelessly in the discharge of their duties or falsely reported their conclusions. But this remark was confessedly based upon a supposed state of facts precisely opposite to that presented by the case; nor was the remark necessary for the decision. This *dictum* has sometimes been treated as authority for the proposition that a master may fully discharge his duty, with respect to providing a safe place of work and safe appliances for the work, by employing competent agents to make inspections and repairs. But since the decision, by this court, in the case of *Steamship Co.* v. *Ingebregsten,* 28 *Vroom* 400, it must be taken as established that this duty may not be delegated by the master except at his own risk; that those who are employed to make inspections and repairs for the purpose of keeping in proper repair the place of work and the tools and appliances of the work are not fellow-servants engaged in a common employment with those employes for whose reasonable safety the precautions are required. In that case Mr. Justice Dixon said: "The master's duty to his servant requires of the former the exercise of reasonable care and skill in furnishing suitable machinery and appliances for carrying on the business in which he employs the servant, and in keeping such machinery and appliances in repair, including the duty of making inspections and tests at proper intervals. So far the authorities are at one. Almost as unanimous are they in the proposition that if the master selects an agent to perform this duty for him, and the agent fails to exercise reasonable care and skill in its performance, the master is responsible for the fault."

It is now fully recognized in this state that the test for determining, in a given case, whether the master is liable to one servant for the negligence of another servant, is in the answer to the inquiry, whether the negligent servant was in the performance of work which the law imposes as a positive duty upon the master by way of preparation for the general employment; or whether, on the other hand, such negligent servant was at the time in the performance of some duty incidental to the general employment itself. In the former case, the master is liable; in the latter case, not. It is the master's duty to exercise reasonable care in furnishing those things which go to make up the plant and appliances, so as to have them at the outset reasonably safe for the work of the servants who are engaged in the general employment; and further, to exercise reasonable care, by means of inspections and repairs, when needed, to keep the plant and appliances reasonably safe. These duties the master cannot avoid by employing others for their performance. If the negligence of those who are charged with such performance results in injury to one of those servants for whose safety the precautions are required, the master is liable, unless, by reason of the obvious character of the consequent risk, or otherwise, it is assumed by the injured employe, or unless the injury is brought about by contributory negligence. Recent cases clearly recognize the distinction referred to.

In *Maher* v. *Thropp,* 30 *Vroom* 186, Mr. Justice Van Syckel, speaking for this court, said: "The master was charged with the duty to furnish to the plaintiff proper implements with which to do the work in which he engaged. If he intrusted the discharge of that obligation to the foreman, he is undoubtedly responsible for the failure of the foreman to exercise due care in that respect. But the injury to the plaintiff is in no way chargeable to the failure of the master to furnish proper tools. On the contrary, the accident is attributable wholly to the fact that the plaintiff, under the advice of the foreman, laid aside the safe tool and used in its place a chisel and a pair of tongs. In doing that the foreman did not act as the vice principal, standing in the

place of the master, but he acted as a fellow-servant, performing, with the assistance of the plaintiff, the work in which both were engaged, and for which the master had provided the necessary implements with due care."

In *McLaughlin* v. *Camden Iron Works*, 31 *Vroom* 557, Mr. Justice Collins said: "Where appliances for work are needed, the duty is on the master to use reasonable care in their selection, and he cannot escape it by delegation. But carelessness in their use, or failure to use them, on the part of his servant, whereby injury is received by a fellow-servant in the same common employment, is not chargeable to the master, no matter what may be the grade or authority of the servant."

In *Curley* v. *Hoff*, 33 *Vroom* 758, Mr. Justice Collins said (at *p.* 762) : "While delegation to others will not relieve the master from the consequences of negligence in the performance of what the law makes the master's duty, it will not charge upon the master the consequences of the negligence of his servants toward each other. The risk of that negligence, for reasons of public policy, the law places on the servant. The test always must be whether the negligent act or omission was in discharge of the master's or the servant's duty."

In *Cole* v. *Warren Manufacturing Co.*, 34 *Vroom* 626, the same distinction was taken.

It is plain, therefore, that, so far as the motions to nonsuit and for direction of a verdict were based upon the idea that the men charged with inspection and repair of the track were fellow-servants of the plaintiff, the motions were properly refused. This disposes, at the same time, of the principal remaining exceptions, they being intended to raise the same question upon the instructions of the trial court to the jury.

The motions to nonsuit and to direct a verdict were based on the further ground that the risk of derailment, by reason of the "low point" in question, was assumed by the plaintiff, because he had passed over the same place many times before while traveling in defendant's trains, the last trip being about an hour before the accident. The "low spot" caused a sudden jolt or lurch that was readily observed by passengers in the train. It is insisted, therefore, that the plaintiff assumed

the risk. *Regan* v. *Palo,* 33 *Vroom* 30; *Atha & Illingworth Co.* v. *Costello,* 34 *Id.* 27.

But the risk of injury from a defect in a track or roadbed, negligently permitted to remain in bad repair, is not one of the ordinary and natural risks of the employment of a trainman. It was, therefore, not assumed by the plaintiff unless it was known to him, or was so obvious that, by the exercise of ordinary care on his part, it would have been known. A servant has the right to take it for granted that his master has performed his duty, by the exercise of that reasonable care for the servant's safety which the law requires, until the servant is warned or notified of danger, or until the danger becomes so obvious that a reasonably prudent servant, under the circumstances, would observe it.

But plainly it was far from obvious to one traveling upon the train that the roughness of the track indicated a weakness sufficient to cause derailment. The trial judge, therefore, could not say, as a matter of law, that the plaintiff assumed the risk of the injury that he received, and so it was, at best, a question for the jury to determine whether the special danger was known to the plaintiff, or was so obvious that he ought to have known of it.

One of the assignments of error is directed to the refusal to charge, as requested by the defendant, that "if the plaintiff was guilty of any negligence contributing to the injury for which recovery is sought, he cannot recover."

The court charged, in substance, that, in order to bar the plaintiff, the defendant must show "that some negligence of the plaintiff contributed to the accident in such a way that, if the plaintiff had not been negligent, the accident would not have happened."

The criticism is upon the use of the word "accident," instead of the word "injury," which was included in the request. The negligence imputed to the plaintiff was the failure to couple up the air-brakes when the train was made up. This admittedly was his duty. The argument is that the "accident" refers to the derailment, while the "injury"—that is, the wounding of the plaintiff—occurred by the fall of the car

to the bottom of the embankment. The answer is that, with respect to causation, they are practically indistinguishable. If the derailment was not caused, in whole or in part, by the air-brakes being uncoupled, neither was the fall of the car from the bank so caused. It is true the evidence indicates that the car was dragged along the ties for two hundred feet or more after leaving the rails, and that then the coupling between the tender and the car broke, leaving the car to pitch down the embankment. But it is not perceived that the use of air-brakes, after the car left the track, could have averted the catastrophe. For the purposes of this case it was proper enough to treat "accident" and "injury" as synonymous.

The other assignments of error have been examined and found to be without support. The trial judge, in his charge to the jury, did no injustice to the defendant. His rulings upon questions of evidence, so far as complained of, were correct.

The judgment should be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VROOM. 14.

*For reversal*—None.