NICHOLAS SEVERINI, PLAINTIFF-RESPONDENT, v. HARRY OLIM, DEFENDANT-APPELLANT.

Submitted October term, 1936—Decided December 23, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the appellant, *Edward R. McGlynn*.

For the respondent, *Nathan Reibel*.

The opinion of the court was delivered by

PERSKIE, J.   Defendant appeals from a judgment of the Union County Court of Common Pleas in favor of the plaintiff.   The judgment is based on a jury verdict which was originally for $1,500 but on a rule to show cause, on the ground that it was excessive, it was reduced to $1,000, and, as so reduced, was accepted by the plaintiff.

This is a tort action.   Plaintiff charged defendant with eight acts of negligence.   These were finally reduced, in substance, to the single charge that defendant was negligent because he failed, under the circumstances here exhibited, to furnish plaintiff with a reasonably safe place while the latter was in the act of removing a running board from an old automobile in defendant's automobile junk yard and which running board plaintiff had purchased from the defendant and as part of the purchase price agreed to remove the same.

Defendant denied that he was under any such duty to the plaintiff, and that plaintiff was guilty of contributory negligence, or that he assumed the risk, if any existed.

The proofs disclose that defendant operated an automobile junk yard in the city of Elizabeth, New Jersey. On September 21st, 1934, the plaintiff called at the defendant's place of business for the purpose of purchasing a second-hand running board for a Chrysler automobile. Plaintiff saw what he wanted. Some little talk followed as to the price for the said board. Plaintiff says that it was to be ninety-five cents and defendant says that it was to be $1.50. At all events it was getting late and defendant told plaintiff to return the next day. This plaintiff did. After further bargaining on the price defendant said: "I will tell you what I will do. Here is (*sic*) the tools, take the running board off and give me fifty cents for it." Plaintiff agreed and then asked defendant if it was all right to work on the car because there were other cars nearby. Defendant replied, "the car was okay to work on it." That while plaintiff was endeavoring to detach the board from the chassis he suddenly heard a crack and the automobile swayed and moved forward; that as he was coping with the situation the best he could the back door of the car opened and he saw some motors in the car; that the final result was that his hand was caught between the body of the car and the ground and he sustained the injuries for which he sued. Plaintiff's proofs further tended to disclose that defendant had carelessly jacked up the automobile and had some motors in the back part thereof; that when plaintiff endeavored to detach the running board one of the supports on which the automobile rested, a two or five-gallon can, collapsed and caused the automobile to tilt over and imprison his hand as aforesaid. The defendant's proof was directly opposite in all details as to the happening of the accident. His proofs are that the plaintiff had a full view of the automobile at all times; that the defendant told the plaintiff that the value of the running board was $1.50, but since the value of the labor in detaching it was $1 that the plaintiff suggested that he be allowed to detach the board and pay fifty cents for it; that such bargain was struck; that plaintiff went to his car for

tools and when he ascertained that they were too light for the job he obtained a heavy hammer from defendant; that the automobile in question was not jacked up but was resting on the ground on its dismantled wheels; that the automobile was not tilted or upset as was described by the plaintiff; that the plaintiff's left hand was jammed between the running board which he was trying to remove, and the middle bracket thereof and that there was nothing in the inside of the automobile that would cause it to sway and tilt.

Defendant moved for a nonsuit. That motion was rested on three grounds: (1) that defendant was under no obligation to provide a safe place; (2) that plaintiff assumed the risk, and (3) that the accident could not have happened as described by the plaintiff. The trial judge denied the motion. He submitted the case to the jury, and we think properly so, for its determination as to whether the defendant used reasonable care in discharging his duty to the plaintiff of providing him with a reasonably safe place to remove the running board, i. e., was the car in a reasonably safe position from which he could, in the exercise of reasonable care, remove the running board?

Appellant argues: *First*, that his only duty in the premises was to warn plaintiff of known latent dangers. That argument is based on the ground that under the special arrangements for the sale and purchase of the running board plaintiff took upon himself, in light of the obvious condition and place of the car, and all other circumstances, the task or work of removing the board, and that, therefore, the only duty defendant owed plaintiff was to warn him of latent dangers which were either known to defendant or should have been known to him; that the accident grew out of the very nature of the work which plaintiff was doing. And although it is strongly urged that defendant had no control over plaintiff in his removal of the running board, i. e., that there was no master and servant relationship between them, nevertheless, the holding in *Curley* v. *Hoff*, 62 *N. J. L.* 758; 42 *Atl. Rep.* 731, is invoked. In that case the Court of Errors and Appeals held the rule of duty, for a *master* to use reasonable care that the place of working of his *servants* should be kept safe, is not

fully applicable in a case where the work itself involves the place of working; that the master is not liable to the servant against the very danger arising from his work; he is, under such circumstances, under the duty merely to use reasonable care to discover and give notice of latent dangers.

Clearly there was no master and servant relationship between the parties in this cause. The case of *Curley* v. *Hoff, supra,* has no application. The plaintiff was where he undoubtedly had a right to be. He was under the car in pursuance of a contractual right of mutual interest to both parties. He was, therefore, an invitee. And as an invitee defendant owed him the duty to use ordinary care. In other words defendant owed plaintiff the duty to exercise ordinary care to render the premises reasonably safe for the purpose embraced in the invitation, and for the neglect of that duty a liability ensues to respond in damages for resulting injuries. *Cf. Murphy* v. *Core Joint Concrete Pipe Co.,* 110 *N. J. L.* 83; 164 *Atl. Rep.* 262, and cases therein on page 86. And, as already pointed out, defendant told plaintiff "the car was okay to work on it."

We are of the opinion that the testimony adduced for the plaintiff and the legitimate inferences to be drawn therefrom were ample to support a verdict for the plaintiff. The motion to nonsuit was, therefore, properly denied. *Cf. Kempf* v. *New York, O. and W. Railway Co.,* 112 *N. J. L.* 118; 169 *Atl. Rep.* 713; *Repasky* v. *Novich,* 113 *N. J. L.* 126; 172 *Atl. Rep.* 374.

*Second:* It is argued that in no event was the defendant under the absolute duty of furnishing a reasonably safe situation to enable the plaintiff to remove the running board.

True it is that the trial judge did on the motion to nonsuit say: "The only thing that I can leave to the jury is this: Was this place reasonably safe for this man to work in?" but he also said, in the sentence immediately following: "They [jury] must find some act of negligence, some act of commission or omission of the owner which caused the accident." And moreover, in his charge which must of course be read in its entirety (*Lyon* v. *Fabricant,* 113 *N. J. L.* 62; 172 *Atl. Rep.* 567) he said: "All that the owner of the car, the junk

man, was required by law to do was to furnish a place *that was reasonably safe for the man to work in and take off the running board. In other words, was the car in a reasonably safe condition to work on?* If it was, that is the end of the case because that is all the junk man was required to do, to furnish a place that was reasonably safe, *using ordinary care to furnish a place which was in a reasonably safe condition."* And again, in his charge, he said: *"If the car shifted forward as the plaintiff says it did, was that the fault of the defendant, did he use a reasonable degree of care in providing a reasonably safe place for the man to work in?"* (Italics supplied.)

The language thus employed is not subject to the vice pointed out in the case of *Krause* v. *Emanuel E. Katz, Inc.,* 14 *N. J. Mis. R.* 424; 185 *Atl. Rep.* 537, and urged here as applicable. In that case the trial judge said that it was the duty of one using the highway to so operate his machine as not to cause injury to another. We, of course, held such a charge erroneous. We said: "The duty is merely to use reasonable care." It appears to us that the trial judge made very clear to the jury in the instant case that all defendant was obliged to do was to use ordinary care in providing plaintiff, as an invitee, a reasonably safe place to do the work. The language employed by the trial judge is the language sanctioned and approved in *Coyne* v. *Mutual Grocery Co., Inc.,* 116 *N. J. L.* 36, 38; 181 *Atl. Rep.* 314 (liability of a proprietor of a retail store to a customer): "It was incumbent upon it [defendant] to provide a reasonably safe place for its patrons; it was required to use ordinary care in fulfilling the obligation to safeguard them."

We think that the trial judge fairly and accurately stated the issues involved and the law applicable thereto. The charge is free from reversible error.

Judgment is affirmed, with costs.