## National Fertilizer Co. *v.* Travis.

### (*Nashville.* January 14, 1899.)

1. NEW TRIAL. *Setting aside third verdict.*

    The Court is not precluded from setting aside a third verdict where there was error in the Court's charge on the second and third trials. (*Post, pp. 18, 21, 22.*)

2. MASTER AND SERVANT. *Servant sustaining dual relation to his fellows.*

    A servant may sustain toward his fellows the dual relation or character of vice principal as to some duties and of fellow-servant as to others. And, in an action claiming damages for injury resulting from the act of such servant to his fellow or inferior servant, it is error for the Court to omit, especially if requested by a party, to charge fully and accurately as to the distinction, as regards the master's liability, between the official negligence of a vice principal and the individual negligence of a mere fellow servant. (*Post, pp. 19–21.*)

    Cases cited and approved: Gann *v.* Railroad, 101 Tenn., 380; Knox *v.* Railroad, 101 Tenn., 375; Electric R. Co. *v.* Lawson, 101 Tenn., 406.

3. SAME. *Fellow-servants.*

    An engineer is the fellow-servant of one who adjusts the belts when machinery is set in motion, when both act under prescribed rules, and especially where the latter controls the action of the engineer. The fact that the engineer may, in other matters, occupy the position of a vice principal does not affect the question. (*Post, pp. 19–21.*)

    Case cited and approved: 80 Ind., 526.

4. SAME. *Same.*

    The facts being stated, the question of whether a person is a fellow-servant or a superior is one of law for the Court. Hence, if upon plaintiff's theory and contention he was no more than

National Fertilizer Co. *v.* Travis.

a fellow-servant, the Court should so instruct the jury and submit the case upon the other issues. (*Post, pp. 21, 22.*)

5. SAME. *Same.*

The Court finds upon the evidence that the engineer was, in operating the engine, a fellow-servant of another employe who adjusted the belts, but that he was vice principal to the same employe as regards the safety and repair of the signal appliance intended for the latter's protection. (*Post, p. 22.*)

6. SAME. *Master's liability for injury caused servant defined.*

To render a company liable for injury inflicted upon an employe by a fellow-servant, there must be shown (1) general incompetency of the fellow-servant; (2) knowledge of such incompetency by the master and want of such knowledge in equal degree by the complaining servant; (3) some specific negligent act by the incompetent servant proximately causing the injury. (*Post, p. 24.*)

7. SAME. *Inexperience not proof of incompetency, when.*

Mere inexperience in the performance of duties requiring no great amount of intelligence or skill is not, necessarily, evidence of incompetency. (*Post, pp. 24, 25.*)

---

FROM DAVIDSON.

---

Appeal in error from Second Circuit Court of Davidson County. JNO. W. CHILDRESS, J.

E. H. EAST and J. S. PILCHER for National Fertilizer Co.

LELLYETT & BARR and STEGER, WASHINGTON & JACKSON for Travis.

WILKES, J. This is an action for damages for the negligent killing of John Loomis, an employe

18 P—2

of the defendant company. The deceased, at the time of the killing, was engaged in putting belts upon three pulleys and was killed in consequence of his clothing being caught upon the pulley shaft and wound around it in such manner as to bind him to it and cause him to revolve with it, thus mangling him and dashing him to pieces. There were three trials before the Court and jury, in two of which there was a verdict for the plaintiff, which were set aside by the trial Judge because not sustained by the weight of the evidence. Upon the third trial there was a verdict for $6,000, and the trial Judge, on motion for new trial, refused to set it aside, though dissatisfied with the evidence, believing that he had no power to set aside the third verdict. Accordingly judgment was rendered and the defendant company has appealed and assigned quite a number of errors.

The recovery is insisted upon on the ground that the engineer was incompetent to operate the engine and run the machinery; that he started the engine at full speed without giving timely warning, and without receiving a signal from the deceased that he might safely increase the speed; and that the signaling appliances were defective and out of order.

While there are a great number of errors assigned, the defense generally stated is that the deceased was guilty of contributory negligence in wearing an overcoat, which made the work about the

machinery hazardous, and this, it is contended, was the proximate cause of the injury; that there was no evidence of general incompetency of the engineer, and none whatever of any specific negligence at the time of the killing which caused or proximately contributed to it, and it is insisted on the whole case that there is no evidence to support the verdict.

Much discussion is had in the case upon the subject of superior and fellow-servants. Plaintiff insists that Fain, the engineer in charge of the machinery, was the superior of Loomis, and that the latter was so far under his control as to be an inferior servant, with Fain not only as his superior but occupying the relation of vice principal as to him. We are of opinion the Court did not fully charge the law applicable to the facts of this case upon this subject of superior, inferior, and fellow-servants.

There is evidence to show that Fain was foreman, and as such had control and supervision over Loomis; that he employed and discharged the hands generally, and usually directed them in their work, and there is evidence that Loomis was directed by Fain to do the particular work in which he was engaged when he was injured. But there is evidence also showing that Fain was filling several positions at the same time—that is, he was shipping clerk, foreman, and engineer. The law is well settled that an employe may occupy the place of the principal as to some duties, and as to others be simply a fellow-

servant. For his official negligence as vice principal, his principal would be responsible; for his individual acts of negligence as fellow-servant, the principal would not be liable. This question has been recently before this Court and maturely considered in the case of *Gann* v. *Railroad*, 17 Pickle, 380, and the rule is there attempted to be fully stated and the authorities bearing on the subject. See, also, *Knox* v. *Railroad*, 17 Pickle, 375, and *Chattanooga Electric Ry. Co.* v. *Lawson*, 17 Pickle, 406. In the case at bar it is evident that if the deceased was killed by the negligence of Fain, while in discharge of his duties as engineer in operating the engine, it was important that the relation of Fain, as such engineer, to Loomis be fully and correctly stated, and special instruction was asked upon this point, but was not given by the Court in the explicit terms asked, and which were demanded by the facts of the case.

It is evident that Fain, in this case, if negligent at all, was negligent in operating the engine and in either failing to give or to wait for the proper signals prescribed by the rules of the company. Now, in the running of the engine he was not in any way the superior, but was the fellow-servant, of Loomis. According to plaintiff's theory, that Fain was to start up the engine only upon notice from Loomis, it is evident that he was under the direction, as to that matter, of Loomis, and Loomis was not under his direction. Upon defend-

ant's theory, then, Loomis and Fain were both operating under rules of the company. Fain was still under Loomis' control, for Loomis could signal him to stop or run slow, and it was the duty of Fain, as engineer, to obey Loomis' direction, and they were fellow-servants.

In the case of *Boyce* v. *Fitzpatrick*, 80 Ind., 526, it appeared that the plaintiff was injured while employed under the direction of the superintendent and manager, who was, at the same time, in charge of the machinery in the defendant's factory, through the negligence of the superintendent, and it was held that he was the fellow-servant of the employe, and not a superior or vice principal. See, also, Bailey's Personal Injuries, Secs. 1963, 2064.

We are of opinion that, the facts being stated, the question of whether a person is a fellow-servant or a superior is one of law for the Court, and that, upon the facts as contended for by the plaintiff in this case, Fain, in running the engine, was the fellow-servant of Loomis while the latter was engaged in adjusting the machinery or belts, and the Court should have so charged, and then rested the case before the jury upon the other contentions made by the plaintiff; that Fain, though a fellow-servant, was wholly incompetent, and known to be so for the work and place of an engineer, and that the appliances for signaling were defective. How far this error was instrumental in causing the verdict as rendered we cannot tell. There being error

in the charge on both the second and third trials, the rule of the conclusiveness of two verdicts does not apply.

Plaintiff does not, however, rest his right to re cover upon the fact that Fain was the superior and Loomis an inferior under him, but he insists that the whistle appliance through the building, for giving notice by the engineer or to him, was not in proper condition, but was defective. Under the facts as developed by this record, it was clearly the duty of Fain, as foreman, to see that this appliance for giving notice was in proper condition and not defect- ive, and as to this feature of the case he was the superior and vice principal of Loomis, although he was his fellow-servant in the work of running the engine. Upon this branch of the case there is no definite reliable evidence that the whistling appliance was defective, and none whatever that Fain knew of any defect in it or had any ground to suspect any.

It appears that if there was any defect in the appliance, it was not in its being defective in con- struction, but the most that a witness (not remark- able for intelligence) could say was that he supposes some water must have. been left in it over night, which prevented its sounding promptly. It does not appear that Loomis attempted to sound the whistle and was unable to do so, and the witness, James Carter, states that when he pulled the cord the first time, if the whistle sounded he did not hear it;

but he was excited and cannot say he pulled it properly, but that when he pulled it the second time it did sound and was heard by him. We are unable to find in the record any reliable evidence that this appliance was out of order or defective, and no evidence whatever, if there was any defect in it, that it was known to Fain, the foreman, or could have been known to him in the exercise of proper diligence by him. We are of opinion, under the proof, that it was incumbent on Fain, as foreman, to have this appliance safe, and, if he knowingly failed, the company would be responsible; for, while in running the engine he was a fellow-servant, in furnishing the appliance he stood in the place of the master, and the master was responsible for his acts. This distinction is fully pointed out in the Gann case.

But plaintiff insists that if this all be true, still the defendant is liable because Fain was totally incompetent to run the engine in such manner as to insure the safety of the employes about the building.

Much is said about Fain's not observing the rules as to signals in starting the machinery. But this is important alone upon the question as to whether or not he was a competent engineer. If he was a skilled and competent engineer, the fact that he failed to observe the rules would be only evidence of his individual negligence in the discharge of his duty as a fellow-servant for which the principal would not be liable. If Fain was incompetent to operate the

engine and this fact was known to the company and not known to the deceased, and if they continued him in such service and he was on this occasion guilty of negligence which proximately caused the death, then the company would be liable.

These things, however, must concur: general incompetency of the engineer, knowledge by the company of such incompetency and want of such knowledge by Loomis, and some specific act of negligence on Fain's part which proximately caused the injury and death. No matter if he was incompetent and it was known to the company, still if there was no act of negligence which proximately caused this particular injury, the company cannot be held liable therefor. There is evidence that Fain was a young man who had left school and had entered into the service of the company first as shipping clerk, then as foreman, and then as engineer, and he was probably filling all these places when the injury occurred. There is no imputation against his general intelligence, but only against his experience as an engineer. Upon this feature of the case it does not appear that it requires any great amount of intelligence or skill to operate an engine as he was required to do. It does appear that the young man had been running the engine for some nine months. When he was first put in charge of it, it is shown that he was not entirely familiar with it, and some evidence of his want of information appears in the record, but this all related to a period of service

prior to the time of this accident, and it is at best quite indefinite in its character. Inexperience is not conclusive and can hardly be held to be even persuasive of incompetency. The most thoroughly competent machinists and experts were at one time inexperienced, but this frequently leads to greater care than is exercised by the party who has become careless through continual service about the work.

It appears that the deceased had been a long time in the employ of the company and was thoroughly familiar with all its departments and the details of the work, and must have well known the capacity of Fain as engineer. On this particular occasion it was his duty, or he was directed to place the belts upon these different pulleys which were to operate different parts of the machinery. These pulleys were all upon the same shaft and only a few feet apart. The belts could only be put on while the machinery was in motion, and it was important that the motion should be slow, as rapid motion would tend to catch the person or his clothing and draw him on to the moving machinery. It was a matter which required caution and care to be safely done.

No one saw how the accident occurred. When first discovered, soon after the engine was started, the deceased was fastened to the shaft by his clothing, which was fairly wrapped around it, and he was being rapidly revolved with the shaft around and around, his body closely pinioned to it by his

clothing and his legs and feet loose and striking the floor with each revolution until they were broken and dismembered. He had, it appears, succeeded in putting on two of the three belts, but had not put on the third one. He had made no signal to stop the machinery or to continue to run it slowly. There are two theories as to the manner of making the signals. Plaintiff insists that when belting was to be done it was the duty of the engineer not to start the machinery into rapid motion until the signal was given that the belting was on. The defendant's theory is that the machinery was started slowly, and if, after five minutes, no signal to stop or continue slowly was given, then the machinery was to be put in rapid motion.

There is evidence to support both theories; but grant that the one advanced by the plaintiff is correct, and that Fain should not have started the engine until he received a signal from Loomis, and that he should have waited for the signal and failed to do so, this would at least be but the negligent act of a fellow-servant and if that fellow-servant were not shown to be incompetent generally there would be no ground of recovery. It is impossible, from the record, to determine how the accident occurred. It is evident that the deceased had on his overcoat on the morning of the accident and had been previously warned not to wear it about the machinery. There is evidence that after this warning he had cut off the tail, or a part of it, and

some evidence that he had cut it twice and that it was no more than a jacket or roundabout at the time of the accident, but it is also evident that the shaft did catch the clothing, and, while all his clothes were wrapped around it, it appears that the coat contributed largely to bind him to the shaft. It is argued that the shirt and underclothing was found next to the shaft and the coat on the outside, and that this demonstrates that he was not caught by the coat; but it is not shown how the shaft, which was a smooth rod of iron, could have caught the shirt and underclothing without first having caught the coat, nor how either could have caught unless the deceased, by accident or incautiously, had placed himself against it or leaned upon it. In this connection it is strongly urged that the deceased had properly put on two of the belts and was then injured either while putting on the third one or by incautiously exposing himself and being caught by his clothing. It is argued that this is conclusive that the machinery was being properly run and slowly when the first two belts were adjusted, and that if the machinery was running rapidly when the third belt was adjusted it was negligence on the part of deceased to attempt to adjust it, and evidence is introduced to show that the momentum of the machinery could not be suddenly obtained, but would require from a half to a minute to become effective, so that deceased must have been negligent in attempting to put on the third belt

after the momentum had been acquired. This, with the kind of coat worn, was a matter to be considered by the jury upon the question of contributory negligence.

It is incumbent on the plaintiff to show that the accident was caused by some negligent act of the defendant, which proximately caused it, and that this negligence was not the act of a competent fellow-servant, but of the master or some one in his place, or an incompetent servant. We are not satisfied, from the record, that this has been shown, and it may be that the jury were misled into the belief that Fain, while acting as engineer, was the superior of Loomis and gave undue weight to the fact, and held the company responsible for his negligence, if there was any. For these reasons we are constrained to reverse the judgment and remand the cause for another trial. The appellee will pay cost of appeal.