# THE SOUTHERN INDIANA RAILWAY COMPANY v. MARTIN.

[No. 20,024. Filed March 19, 1903.]

APPEAL AND ERROR.—*Record of Pleadings Transmitted on Change of Venue.*—While it is the duty of the clerk of the court from which an appeal is taken to copy in the transcript a complaint transmitted to such court on change of venue, a copy of the complaint set out in a copy of the transcript made on change of venue will be considered on appeal, where it is properly authenticated by the certificate of the clerk of the court from which the appeal is taken. *pp. 281-283.*

MASTER AND SERVANT.—*Personal Injuries.—Pleading.—Vice-Principal.* —A complaint alleged that plaintiff while in the employ of defendant and engaged in unloading and hauling stone on defendant's train was injured while assisting in stretching a wire cable used in unloading stone; that the work was done under the orders and direction of M., the manager of the train and work, who was also defendant's foreman and its vice-principal. *Held,* that the complaint when stripped of conclusions failed to show that M. was more than a mere fellow servant. *pp. 283-287.*

SAME.—*Liability for Negligence of Foreman.*—The master may delegate the duties of a foreman with no responsibility to his other servants further than to use due care not to retain an incompetent or negligent foreman. *pp. 287, 288.*

SAME.—*Employer's Liability Act.—Pleading.*—A case is not stated within the second subdivision of the employer's liability act

(§7083 Burns 1901) where it is not shown that the injured employe was subject to the orders and directions of the person whose negligence caused the injury.  *p. 289.*

MASTER AND SERVANT.—*Negligence.*—*Pleading.*—A complaint alleged that plaintiff was assisting in stretching a cable on a moving train with other employes and that he was injured by reason of the negligence of the foreman in giving the order to carry the cable over the space between the cars, without directing a servant to stand next to the space to keep the cable from falling.  *Held,* that the complaint failed to show a causal connection between the negligence charged and the injury.  *pp. 289, 290.*

SAME.—*Negligence.*—*Fellow Servant.*—*Evidence.*—In an action against a railroad company for an injury to a servant caused by the alleged negligence of defendant's foreman, the evidence showed that plaintiff with twelve or fifteen other employes were stretching a wire cable on a train of flat cars, disentangling the same; that a loop of the cable was handed by one of the employes across the space between the cars to a man on the other car and in some manner the cable was allowed to drop and became caught in the car wheels or cross-ties and injured plaintiff.  *Held,* to show that the cable was dropped by the intervening negligence of one or more of the men in passing it across the space between the cars, rather than that it fell because no one was standing at the intersection as alleged in the complaint.  *pp. 290–292.*

From Orange Circuit Court;  *T. B. Buskirk,* Judge.

Action by Thomas Martin against the Southern Indiana Railway Company.  From a judgment for plaintiff, defendant appeals.  Transferred from the Appellate Court, under §1337u Burns 1901.  *Reversed.*

*T. J. Brooks, W. F. Brooks* and *F. M. Trissal,* for appellant.

*J. R. East, R. H. East* and *McHenry Owen,* for appellee.

GILLETT, J.—This is a suit for personal injuries instituted by appellee against appellant in the Lawrence Circuit Court.  The venue was twice changed—first to the Jackson Circuit Court, and then to the court below, where there was a verdict and judgment for appellee.

By a proper assignment of error, appellant challenges the ruling of the Lawrence Circuit Court in overruling a demurrer to the original or first paragraph of complaint.  It is claimed by appellee that said paragraph is not in the

record. The caption of the transcript of the clerk of the Orange Circuit Court recites that on the 27th day of September, 1900, the defendant filed in the office of said clerk the transcripts of the proceedings in said cause in the circuit courts of Lawrence and Jackson counties, and also the papers and files to said cause, "which transcripts and files," he states, "are as follows, to wit:" The transcript of the clerk of the Lawrence Circuit Court, containing what purports to be not only the proceedings, but also the copies of the files in said cause, is then set out. The certificate of the clerk of the latter court, however, does not authenticate anything beyond the proceedings in that court. There is next exhibited in the transcript what purports to be a transcript of the proceedings in the Jackson Circuit Court, duly certified. Appellant's precipe, that was filed with the clerk of the court below, called for the preparation of a transcript containing not only copies of the transcripts of the proceedings in the Lawrence and Jackson Circuit Courts, but also of "the complaint and the additional paragraph of complaint." In his certificate attached to the record in this cause, said clerk certifies, among other things, that it contains full, true, and complete copies of said transcripts, and of the complaint and additional paragraph of complaint.

The clerk of a circuit or superior court, when a change of venue is taken under §417 Burns 1901, is not required to do more than to 'transmit all the papers and a transcript of all the proceedings to the clerk of the court of the county to which the venue is changed," and the latter is then required to receive and receipt for such papers and transcript. The identity of the original papers does not depend upon a certificate of the clerk of the court from which the change is taken, but upon the fact that they are transmitted by him with a transcript of the proceedings. It therefore appears that it was the duty of the clerk below to copy the paragraph of complaint in question into his transcript, as one

of the original papers received by him. This he did not do. As it clearly appears, however, from his certificate, that the record now before this court does contain a full, true, and complete copy of said original complaint, it is our judgment that we should treat the copy of the complaint set out in the copy of the transcript made on a change of the venue from Lawrence county as a sufficiently certified copy of the original or first paragraph of complaint. Otherwise stated, the clerk of the Lawrence Circuit Court, while he copied the complaint into his transcript, only certified to the proceedings, but the clerk of the court below authenticates the complaint set out in the Lawrence county transcript by his reference to it in the caption of the principal record and by his final certificate.

Said paragraph of complaint is as follows: "The plaintiff, Thomas Martin, complains of the defendant and says: That heretofore, to wit, on the 11th day of April, 1899, the defendant was, and for a long time prior thereto had been, a corporation duly organized and doing business under the laws of the State of Indiana, and had a track, engines, and cars extending from Bedford, Indiana, to a place called Salt Creek, in Lawrence county, in said State; that on said 11th day of April, 1899, this plaintiff, with many other persons, were employes of the defendant and engaged in loading, unloading, and hauling stone on defendant's train used for that purpose, and were all in charge of one George Mathieu, the defendant's manager of said train and work, and who had full charge and management of said train and work done therewith; that said Mathieu was also the foreman of the defendant and in charge of its work in hauling and loading and unloading stone, and was its vice-principal and representative; that so to haul, load, and unload said stone a wire cable or rope was used to remove the stones from flat cars; that said cable was 150 feet long and three-fourths inch in diameter; that on said date the defendant had taken two flat cars loaded with stone to a

point called Salt Creek, some three or four miles west of
Bedford, and was returning with the empty cars, and a
number of defendant's employes, including the plaintiff,
were riding eastward on said cars and the said cable so made
of wire was lying on the second flat car forward,—said cars
being pushed eastward; that while said cars were being
shoved or pushed eastward, and while said rope was so
coiled up on the forward flat car, and while said cars were
in motion, and running at the rate of twenty miles per
hour, as aforesaid, the said George Mathieu, foreman and
manager of said train, ordered and directed this plaintiff
and others of its employes to straighten and take the kinks
out of said cable and to take one end of the same westward
to the engine pushing said cars, and ordered and directed
this plaintiff to take hold of and manage the uncoiling of
said cable, all of which orders were given while said cars
were so running as aforesaid; that this plaintiff and others
of the employes of the defendant obeyed said order, and the
said George Mathieu, in person, ordered and directed said
cable rope to be taken over the coupling of the first and
second flat cars so in motion, and going eastward, and that
said order and command was negligently given, in this,
to wit: That the said Mathieu failed to place any one of
the defendant's employes at the connection of the two flat
cars, and failed to direct any one of its employes to hold
said cable rope up so as not to allow it to drop through
between said flat cars and catch on the ties of defendant's
track and suddenly and quickly uncoil itself with such
speed and force as to injure the defendant's employes, and
especially this plaintiff; that the said George Mathieu knew
that it would endanger the employes of the defendant so to
uncoil said rope by allowing it to drop through between
said flat cars, and to fail to place a person at said point to
hold said rope up so that the same would not drop through
said space between said cars; that the defendant through
its said foreman and manager, George Mathieu, in giving

the said order to take one end of said cable back to the engine, and in giving this plaintiff orders so to uncoil said cable and assist in taking the kinks out of the same, and moving and having moved the said cable over the space between said flat cars, without placing a man there to prevent said cable from falling through the space between said cars, was careless and negligent, for the reason that he knew, or should have known by the exercise of reasonable care, that in so doing the said cable was liable to drop through the space existing between said flat cars, and drag on the ground until it caught on a cross-tie, or till it was caught by a car wheel, or fastened by some object, and then suddenly straighten out and jerk suddenly against the plaintiff and other employes with such force as greatly to injure them; that on said 11th day of April, 1899, while the plaintiff was so employed by the defendant at the sum of $1.25 per day, and while he was in the line of his duty, and while obeying the order of said George Mathieu as aforesaid, and while unable to see the condition of said cable at the point it passed over the space between said flat cars,—said space being at his back and not discoverable from the position he was in,—and having no knowledge that any danger existed from the order so given, the said cable being carelessly allowed by said defendant, through said George Mathieu, while said train was so running at great speed, to drop 'through an open space to the ground and track, among the cross-ties and beneath the revolving wheels of said freight-cars so in motion, where said rope or cable caught on a cross-tie, or was caught by the wheels of the car, or was in some way caught on the roadbed, and before the plaintiff could escape the said cable suddenly straightened out, struck the plaintiff on his leg and body, caught him, and instantly dragged him off the train on which he was riding, and while obeying said order as aforesaid, and hurled him against the earth and stone so as to break and mangle the knee joint of his left leg, and other-

wise injure his side, spine, and body to such extent that he from such injuries has become and always will be permanently disabled from manual labor, and caused him to suffer much pain and anguish, and deprived him of the power to earn money by his ordinary occupation; that all of said injuries were caused by the negligence and carelessness of the defendant as herein alleged."

We do not perceive how this paragraph of complaint can be upheld, either upon common law principles, or by virtue of the employer's liability act. §7083 *et seq.* Burns 1901. Looked at from either point of view, the paragraph has marked deficiencies. If we assume the former theory, we find that the paragraph, when stripped of its conclusions relative to the position of the man Mathieu, does not disclose that he was a vice-principal. He may have been the foreman, and a man that appellee was bound to obey, and he may have had charge of the work generally, and yet not have been the master's *alter ego* in respect to those duties that the master owed the servant, for such duties may have been devolved upon another and even an inferior servant. *Indiana Car Co.* v. *Parker,* 100 Ind. 181; *New Pittsburgh Coal, etc., Co.* v. *Peterson,* 136 Ind. 398, 43 Am. St. 327; *Island Coal Co.* v. *Swaggerty,* 159 Ind. 664, and cases cited; *Central R. Co.* v. *Keegan,* 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; *O'Brien* v. *American Dredging Co.,* 53 N. J. L. 291, 21 Atl. 324. The latter duties can not be delegated in such a way as to absolve the master, and, therefore, whether he makes no provision for their discharge, or charges a servant with their performance, the neglect, if any, is the master's, because it is a master's duty that is neglected. It has been stated that, *"prima facie,* all who enter the employment of a single master are engaged in a common service, and are fellow servants." *Baltimore, etc., R. Co.* v. *Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; *Central R. Co.* v. *Keegan, supra.* If, therefore, in attempting to prepare a complaint in a case of this

general character, there were more attention given to the effort to state facts showing that the alleged negligent employe was charged with the duties that belonged to the master, and less attention bestowed upon the endeavor to manifest the relatively high station and authority of the delinquent employe, there would be fewer reversals of such cases on appeal. Disregarding the conclusions in the pleading, as we must, it is our judgment that it does not show that Mathieu was not a mere fellow servant of appellee's.

Still looking at the complaint from the common law point of view, we have to observe that whatever the authority and position of Mathieu, it appears that in giving the order in question he acted as a mere foreman. We need not state the duties of the master, for they are well understood. See *Northern Pac. R. Co.* v. *Peterson,* 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994. It is sometimes a matter of difficulty to make an application of the duty of the master with reference to the furnishing of a proper place to work, but we think that the paragraph of complaint that we are considering can not be upheld on the theory that the master had omitted to furnish a proper place. The train and every appliance that the appellant had furnished may be presumed to have been proper, and it may be presumed that it had no notice that Mathieu was not a proper man to entrust with the duty of acting as foreman in the performance of the particular work. The whole matter was one of detail that the foreman and the men might properly be permitted to attend to in their own way.

If a man may be a foreman, and not necessarily a vice-principal, as the authorities clearly point out, it must needs follow that the men under him ordinarily assume the risk of his negligence in the capacity of foreman. While the common law holds the master to the performance of the duties that the law imposes upon him, yet it recognizes his right to delegate the duties of a foreman, with no responsi-

bility to his other servants, further than to use due care not to employ or retain an incompetent or negligent foreman.

As was said in *O'Brien* v. *American Dredging Co.,* 53 N. J. L. 291, 297, 21 Atl. 324: "Whether the master retain the superintendence and management of his business, or withdraw himself from it and devolve it on a vice-principal or representative, it is quite apparent that, although the master or his representative may devise the plans, engage the workmen, provide the machinery and tools and direct the performance of work, neither can, as a general rule, be continually present at the execution of all such work. It is the necessary consequence that the mere execution of the planned work must be entrusted to workmen, and, where necessary, to groups or gangs of workmen, and in such case that one should be selected as the leader, boss or foreman, to see the execution of such work. This sort of superiority of service is so essential and so universal that every workman, in entering upon a contract of service, must contemplate its being made use of in a proper case. He therefore makes his contract of service in contemplation of the risk of injury from the negligence of a boss or foreman, as well as from the negligence of another fellow workman. The foreman or superior servant stands to him, in that respect, in the precise position of his other fellow servants."

In *Central R. Co.* v. *Keegan,* 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418, the plaintiff sought to charge the railroad company with the alleged negligence of the conductor or foreman of a switching crew in failing to have some one in control of a detached, moving car, but the court said: "A personal, positive duty would clearly not have been imposed upon a natural person, owner of a railroad, to supervise and control the details of the operation of switching cars in a railroad yard; neither is such duty imposed as a positive duty upon a corporation; and if O'Brien was neg-

ligent in failing to place himself or some one else at the
brake of the backwardly moving cars, such omission not
being the performance of a positive duty owing by the
master, the plaintiff in error is not responsible therefor."
See, also, *New Pittsburgh Coal, etc., Co.* v. *Peterson,* 136
Ind. 398, 43 Am. St. 327; *Ell* v. *Northern Pac. R. Co.,*
1 N. D. 336, 48 N. W. 222, 26 Am. St. 621, 12 L. R. A.
97; *Potter* v. *New York, etc., R. Co.,* 136 N. Y. 77, 32
N. E. 603.

We now inquire whether a cause of action is stated under
the second or fourth subdivisions of section one of the em-
ployer's liability act.   These subdivisions undoubtedly cre-
ate a greater liability than existed at common law, but we
do not think that either of them renders the paragraph suffi-
cient.   A case is not stated within the second subdivision
because of the insufficient allegations relative to the duty of
appellee to conform to the order or direction of Mathieu
that was given with reference to the cable.   It is not nec-
essary that the precise words of the statute should be used,
but no form of allegation that amounts to less than the
equivalent of the words of the statute will be sufficient.
It is conceivable, notwithstanding the allegations of the
paragraph, that Mathieu did not have any authority to
direct the appellee to do any work upon the return trip.

The paragraph also appears to us insufficient under both
subdivisions, and upon any other theory, because of an
omission to show a causal connection between the negligence
and the injury.   The gist of the charge of negligence seems
to be the giving of the order to carry the end of the cable
over the space between the cars, without directing some
servant to stand next to said space to keep the cable from
falling.   There is a recital, rather than an allegation, as to
"said cable being carelessly allowed by said defendant to
drop, through said George Mathieu," but we take it that it
was not even the purpose of the pleader to charge that
Mathieu dropped the cable, so it remains that it does not

appear that it was dropped by anyone while acting under said order. The paragraph does not show that a man was not present endeavoring to hold the cable up, even if he had not been ordered by Mathieu so to do; and in fact it is not made to appear, aside from inference, that the cable was dropped through the space between the cars.

Appellee's counsel insist that the answers to interrogatories that were propounded to the jury show that the general verdict was founded on the additional or second paragraph of complaint. It is unnecessary to determine this question, as the cause will have to be reversed in any event, because of a lack of evidence to support the additional paragraph of complaint.

It appears from the testimony that when the cable was put on the train it was coiled up, and that it was placed at about the center of the surface of the second car from the locomotive; that Mathieu then pulled the link end of the cable westward as far as the locomotive, and, coming back, ordered the men—some twelve or fifteen in number—to take the kinks out of the cable, and that he gave the appellee the further direction to hold up portions of the coil, presumably as an aid to said undertaking; that said work was commenced, the appellee holding portions of the cable, Mathieu disentangling the same and pulling the disentangled portions westward, and two or three other men upon said car, and back of Mathieu, passing the cable westward from hand to hand, and each pulling on the same after he had received it; that a loop of said cable was handed by some man on said car across the space between the cars, to a man on the other car, named Roberts; that, when he had received it, he and a man named Archer started to walk back with it toward the locomotive; that they had gone but a few steps when there was a jerk upon the cable. Roberts is the only man who testified to seeing the end of the cable that was upon said second car. It appears that

said end had a hook upon it, and Roberts testified that the last he saw of said hook was at the time said loop was handed to him, and that said hook was then lying upon said car about ten feet east of the west end of the car that the cable was on. It seems to have been assumed by counsel in some of their questions that the hook dropped between the cars, but there is scarcely a scintilla of evidence to that effect. The only direct testimony upon the subject of the falling of the cable was that of Roberts, who testified that as he felt a jerk in the cable, he looked back, and, perceiving that it was caught on the side, he let go of it. There is absolutely no evidence as to what caused the end of the cable to fall between the cars, if it did so fall, and there is no evidence that there was not a man or men at the west end of said second car at the time the cable fell. There is uncontradicted testimony given by a witness for appellee that there was a man at the opening, and upon said car, who handed the loop to Roberts but a few moments before the accident. If it were the fact that that man was standing and remained at the end of the car, and was assisting in the general work of straightening out the cable and passing it across the space between the cars, it would hardly seem necessary that he should receive a specific instruction not to let the cable fall between the cars. Making due allowance for such deductions as might be made by the process of exclusion, we still think that there were such breaks in the alleged line of causation leading from the alleged negligence to the injury that the jury were not authorized to infer that the appellee was injured by the negligence of appellee's foreman, as charged in the second or additional paragraph of complaint. The hypothesis would be quite as consistent that the cable was dropped by the intervening negligence of one or more of the men in passing the cable across, as would be the assumption that the cable fell because no one was standing at the intersection.

Appellee's counsel make the point that the certificate of the clerk does not show that it was the original bill of exceptions of the evidence that was incorporated into the record, as required by the precipe. The point is not well taken.

Judgment reversed. The trial court is directed to grant a new trial, and to sustain the demurrer to the original paragraph of complaint.