## SOUTHERN INDIANA RAILWAY COMPANY v. HARRELL.

[No. 20,137.   Filed October 9, 1903.   Rehearing denied January 13, 1904.]

APPEAL.—*Demurrers to Several Paragraphs of Complaint.—General Exception.—Assignment of Error.*—A general exception to the overruling of demurrers to several paragraphs of complaint reserves no question, and an assignment of error predicated thereon presents no question on appeal. *p. 691.*

| 161 | 689 |
| 163 | 253 |
| 161 | 689 |
| e164 | 516 |
| 164 | 521 |
| 164 | 522 |
| 161 | 689 |
| 165 | 331 |
| 161 | 689 |
| 166 | 275 |
| 166 | 276 |
| e167 | 253 |
| o167 | 609 |
| f168 | 230 |
| f168 | 352 |
| c168 | 673 |
| f168 | 689 |
| 161 | 689 |
| 169 | 678 |
| f169 | 685 |
| f170 | 11 |
| f170 | 277 |
| f170 | 376 |

Southern Ind. R. Co. *v.* Harrell.

MASTER AND SERVANT.—*Proper Appliances.*—*Negligence by Servant.*—It is a master's duty to have machinery and appliances properly constructed and maintained, but the master is not bound to apprehend that a servant might put the same to a negligent use. *p. 694.*

SAME.—*Injury to Employe.*—*Employers' Liability Act.*—Plaintiff was employed by a railroad company in the construction of a bridge, and, at an interval when there was nothing for him to do, was sitting on a projecting bent. One who had charge of the work negligently ordered a stone lifted by a derrick at the time a train was passing. The suspended stone was thereby thrown against plaintiff, resulting in the injuries complained of. *Held,* that, since plaintiff was not at the time complying with any order of his superior, clause 2 of §1 of the employers' liability act did not apply. *pp. 694, 695.*

SAME.—*Incompetent Co-employes.*—*Assumption of Risk by Fellow Servant.*—An employe impliedly contracts that he will assume, as one of the risks of the service, the perils of injury from the negligence of co-employes, where the employer is free from negligence in the selection and retention of such co-employes. *p. 695.*

SAME.—*Who is Vice-Principal.*—The controlling consideration in determing whether an employe is a vice-principal is, not his comparative rank, not his authority to command, and not his authority to employ or discharge, but whether he is the representative of the master in respect to those duties which the master can not escape by a delegation of them. *p. 695.*

SAME.—*Foreman Distinguished from Vice-Principal.*—Where the person in charge of a number of men in the construction of a railroad bridge was a workman along with those who were subject to his orders, he was a foreman and not a vice-principal. *pp. 695-700.*

SAME.—*Injury to Employe.*—*Negligence of Foreman.*—Plaintiff was one of a number of men in the employ of a railroad company in the construction of a bridge. At an interval when there was nothing for him to do, plaintiff, choosing his own position, sat down near where the work was proceeding. Through the negligence of the foreman, a heavy stone suspended by a derrick was thrown against plaintiff causing the injuries of which he complains. *Held,* that there was no common law liability. *pp. 691-701.*

SAME.—*Safe Working Place.*—*Master's Duty.*—A master is not bound to have a representative present at every moment to keep the place that a servant might occupy safe, as against the possible negligence of a co-employe. *pp. 700, 701.*

From Greene Circuit Court; *O. B. Harris,* Judge.

Action by Jackson J. Harrell against the Southern Indiana Railway Company. From a judgment for plaintiff, defendant appeals. Appealed from Appellate Court, under clause 3, §1337j Burns 1901. *Reversed.*

*F. M. Trissal, T. J. Brooks, W. F. Brooks,* and *Emerson Short,* for appellant.

*J. R. East, R. H. East* and *McHenry Owen,* for appellee.

GILLETT, J.—This was an action for an injury to the person of appellee. He recovered in the trial court and the judgment was affirmed by the second division of the Appellate Court. Appellant appeals to this court under clause 3, §1337j Burns 1901, and assigns as error here that said division erred in affirming the judgment of the trial court. We proceed to a consideration of such assignments of error in the Appellate Court as were not subsequently waived.

There were seven paragraphs of complaint and appellant demurred to each of them. Its demurrer was overruled and it reserved a general exception to the ruling. Although appellant sought on appeal to question severally said ruling as to each of said paragraphs, yet as the exception was in gross we are compelled to hold that such assignments of error present no question for our consideration. *Noonan v. Bell,* 159 Ind. 329, and cases there cited.

Appellant further assigned as error that the Greene Circuit Court erred in overruling its motion for a new trial. Among other grounds for a new trial, appellant assigned in said motion that the verdict was contrary to the evidence, and, further, that the verdict was contrary to law.

The evidence showed the following state of facts: On July 5, 1899, appellant, a railroad corporation, was engaged in the construction of a railroad bridge over White river, in the county of Greene. A temporary work or bridge had been built over the river, on which a track had been laid. A stone pier was being built under the structure, and a number of men, including appellee, were engaged in its construction, under one John Gratzer. The necessary stone were unloaded from cars, and were placed in position by means of a derrick, which was erected upon a platform a few feet north of the track. The derrick's mast was so

stayed as to give the top a slight inclination toward the south, with the result that in handling a heavy stone it had a tendency to swing toward the pier and track. There was evidence that the derrick was purposely so constructed, with a view to its greater utility; but whether it can be said to have been defective or no, by reason of being so constructed, it appears that appellee, whose principal business was to arrange the tackle about the stone and lower it from the cars, knew of such tendency, and had helped to hold a rope in keeping the boom and suspended stone from swinging over the track. There had never been an attempt to handle a stone when the portion of the track that was adjacent was occupied by a moving locomotive or cars. Near the close of working hours on the day in question a locomotive and two or three flat cars stood near the east end of said temporary bridge. A heavy stone, which had just been unloaded from one of said flat cars, lay upon the pier, occupying its intended place in the top course. A short distance to the west there were several flat cars, and still further on, and near the west end of the bridge, were a portable pile-driver and its car. Appellee, who testified that there was nothing for him to do at that time, was seated upon a projecting bent. He had not received a command as to what place he should occupy. The conductor of the train said to Gratzer: "John, are you going in with us?" The latter answered that he and his men were going to set the stone and return on a hand-car. After about two minutes, occupied by the men in charge of the train in coupling the flat cars and the pile-driver and its car together, the train, as thus made up, started east, and, before the pile-driver reached the pier, the train was moving at a speed of from three to six miles an hour. In the meantime Gratzer ordered one of the men to signal the stationary engineer to raise the stone a little, it being necessary to make a mortar bed under it. The signal was given, and the stone was raised about two feet before the pile-

driver had passed.   Three men—Courtney, Clemmons, and Polland—were holding the stone away from the track, by means of a rope, after the stone was raised above the course in which it had rested.   Clemmons and Polland let go of the rope, Clemmons going to get his trowel and Polland going to get mortar.   Courtney was thus left to hold the stone alone, and, as it proved too heavy for him, he abandoned the rope and sought a place of safety.   The boom then swung around, and the chain which held the suspended stone caught on the running-board of the pile-driver.   This caused the stone to swing east, and as it swung back it struck appellee, crushing one of his feet and injuring the other.   It seems to have been but a brief interval after the stone swung clear until the chain caught on the running-board, as a number of appellee's witnesses, in effect, testified.   Appellee's witness Helms, who was on the third or fourth car east of the pile-driver, testified that the stone was not suspended as he passed the derrick and that he was looking to see that all fall lines were clear.   Gratzer had exclusive charge of the stone work.   He directed the men and worked himself.

The various paragraphs of complaint rest on various theories.   Negligence is charged against appellant in the construction of the derrick, and also against Gratzer and the conductor and the engineer severally.   There is no charge that appellant did not exercise due care in the selection of said employes.   Appellee's counsel say of the complaint: "The first five paragraphs minutely describe all the conditions and concurring causes of the injury.   The sixth paragraph is intended to be pleaded under the second subdivision of §1 of the employers' liability act.   The seventh paragraph charges negligence against the engineer of the train and the conductor, and also against Gratzer, charging them all as vice-principals under the fourth subdivision of the act."

There was not a scintilla of evidence supporting the theory that either the conductor or the engineer was negligent. Neither of them is shown to have known that the stone was suspended or to have had any reason to apprehend that it was. The manner in which the derrick was constructed does not appear to have been the proximate cause of the accident. The derrick possessed a particular utility when constructed as it was, and it was ordinarily safe so long as it was used in accordance with the established custom that the evidence shows had before obtained. It was a master's duty to have the derrick properly constructed and maintained, but appellant was not bound to apprehend that its servant might put the same to a negligent use—a use wholly contrary to the custom that had obtained before the accident. See, on the subject of proximate cause, *Enochs* v. *Pittsburgh, etc., R. Co.,* 145 Ind. 635; Thompson, Negligence (2d ed.), §43 *et seq.*

This brings us to the question as to whether appellant was responsible for the negligence of Gratzer, assuming that he, as well as Clemmons and Polland, was guilty of negligence. As to the employers' liability act (§7083 *et seq.* Burns 1901), it is evident that appellant is not liable under the second subdivision of the first section. That subdivision was not intended to create a liability based on an order or direction, where such order or direction was as broad as the whole service, and where the injured servant, without the compulsion of an order or direction from one whose order or direction he was required to obey, was at the time governing himself according to his own judgment as to what was proper. In so far as the fourth subdivision of said section is concerned it does not appear that Gratzer belonged to any of the classes of servants particularly mentioned therein. The latter part of said subdivision is not any broader than the common law upon the subject; so we may as well consider the remaining question as to liability from that standpoint.

Assuming that Gratzer was negligent, as we have before done, it would follow that appellant might have been liable to a stranger, under the rule of *respondeat superior,* had he been in appellee's place. But in appellee's case negligence could not be predicated on his injury if it was a result of one of the risks of the service, because as to those risks which the servant assumes there is no duty. *American Rolling Mill Co.* v. *Hullinger, ante,* 673; *Fitzgerald* v. *Connecticut River Paper Co.,* 155 Mass. 155.

When the contract of service is entered into the master impliedly contracts that he will exercise ordinary care in the selection and retention of the employe's co-servants, and such employe impliedly contracts that, this requirement complied with, he will assume, as one of the risks of the service, the perils of injury from the negligence of such co-servants. If appellee has made out a case, it must appear that in giving the order to raise the stone Gratzer was acting as a vice-principal, and not as a mere fellow servant.

The controlling consideration in determining whether an employe is a vice-principal is, not his comparative rank, not his authority to command, and not his authority to employ and discharge, but whether he is the representative of the master in respect to those duties which the master can not escape by a delegation of them. *Indiana Car Co.* v. *Parker,* 100 Ind. 181; *New Pittsburgh Coal, etc., Co.* v. *Peterson,* 136 Ind. 398, 43 Am. St. 327; *Robertson* v. *Chicago, etc., R. Co.,* 146 Ind. 486; *Southern Ind. R. Co.* v. *Martin,* 160 Ind. 280. And see, further, monographic note to *Lafayette Bridge Co.* v. *Olsen,* 54 L. R. A. 1.

One of the leading duties of a master, except in instances when it can be said that the complaining servant has assumed the particular risk, is to use ordinary care to keep the place where such servant is employed in as safe a condition as the nature of the employment fairly admits of. To make the above statement certain requires a consideration of the meaning of the word "place." If by this it is meant

that the master, by himself or representative, must be always present to ward off every transient peril that may menace the servant in the particular spot or place that he may chance to occupy while engaged in the performance of his work, then it must be affirmed that the rule of law devolves upon the master a duty that in many instances it would be wholly impracticable to discharge. A railroad company could scarcely employ vice-principals enough to make it sufficiently argus-eyed to guard its servants to that extent. Furthermore, it is to be observed that in some lines of business, like the operation of a railroad, many servants are employed whose respective duties are so correlated that in the very forwarding of the master's business they are protecting the lives and limbs of their co-servants; and if some limitation be not put upon the word "place," as respects transient dangers in the conducting of the details of the business, then every one of such servants becomes, for some purposes, a vice-principal, and the integrity of the co-servant rule is destroyed.

In *Fraser* v. *Red River Lumber Co.,* 45 Minn. 235, it was said: "While we have no disposition to impinge upon the just and salutary rule that makes it the primary duty of the master to furnish to his servants safe instrumentalities and places for work, yet we are satisfied that in many cases the courts, by indulging in too much refined and artificial reasoning, have carried the rule altogether too far, and have often held the master liable in cases where the untutored minds of laymen, in the exercise merely of common sense, would unhesitatingly say that the master had not been derelict in the performance of any duty towards his servants. When it is considered that, where numerous employes are all engaged in prosecuting the same general object, there is hardly one of them whose duties do not, in part at least, in some way relate to or affect the safety of the instrumentalities with which, or of the places in which, the others work, it is easy to see that the rule referred to may be, as it often

has been, carried so far as practically to abrogate the whole doctrine of 'common employment.' We shall not attempt to do what no court has yet been able to do, viz., to formulate a statement of the rule that will furnish a test by which to determine every case; but we may suggest that, in our opinion, an important consideration, often overlooked, is whether the structure, appliance, or instrumentality is one which has been furnished for the work in which the servants are to be engaged, or whether the furnishing and preparation of it is itself part of the work which they are employed to perform. If it be the latter, then, as it is well settled by our own decisions, the master is not liable."

In *Perry* v. *Rogers,* 157 N. Y. 251, 51 N. E. 1021, Parker, C. J., observes that "under the guise of an application of the rule requiring a master to furnish a reasonably safe place for his servants to work in, other attempts before this have been made to deprive a defendant of the benefit of another equally well-settled and just rule of the law of negligence, that a party shall not be held responsible to a servant for an injury occasioned by the negligence of a competent co-employe."

As was said in the decision of *Butler* v. *Townsend,* 126 N. Y. 105, 26 N. E. 1017: "A place, in its broad sense, is never safe in which an accident happens, and an accident always happens in some place, and so the master might also become an insurer."

In line with the above observations are the following expressions from the decision of *Hermann* v. *Port Blakely Mill Co.,* 71 Fed. 853: "The word 'place,' in my judgment, means the premises where the work is being done, and does not comprehend the negligent acts of fellow servants, by reason of which the place is rendered unsafe or dangerous. The fact that the negligent act of a fellow servant renders a place of work unsafe is no sure and safe test of the master's duty and liability in this respect, for it may well be said that any negligence which results in damage.

to some one makes a particular spot or place dangerous or unsafe. To so hold would virtually be making the master responsible for any negligence of a fellow servant which renders a place of work unsafe or dangerous. It would be doing the very thing which it is the policy and object of the general rule not to do. It would create a liability which the master could not avoid by the exercise of any degree of foresight or care." To the same effect, see *Armour* v. *Hahn,* 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440; *Baird* v. *Reilly,* 35 C. C. A. 78, 92 Fed. 884; *Cleveland, etc., R. Co.* v. *Brown,* 20 C. C. A. 147, 73 Fed. 970; *City of Minneapolis* v. *Lundin,* 7 C. C. A. 344, 58 Fed. 525.

"The test of liability," said the court in *Sofield* v. *Guggenheim Smelting Co.,* 64 N. J. L. 605, 46 Atl. 711, 50 L. R. A. 417, "is not the safety of the place or appliances at the instant of injury, but the character of the duty the negligent performance of which caused the injury." In the case of *The Queen,* 40 Fed. 694, we find the following language: "It would be absurd to say that the owners owed a duty to the seamen that too long a hawser should never be used, or that signals in a fog should be properly given by their own vessel. These details belong to the ordinary work of navigation and to the men employed to conduct it. As to this work, the owners owe no duty to the officers or seamen to see it properly performed."

In the endeavor so to correlate the deep-rooted doctrines relative to the master's duty to his servant and the servant's assumption of risk with respect to his co-employes as to maintain such doctrines in a proper relation, we find it stated by the courts that the master is not liable to his servant for the negligence of his co-servants in respect to the details of the work *(Central R. Co.* v. *Keegan,* 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; *Southern Ind. R. Co.* v. *Martin,* 160 Ind. 280; *O'Brien* v. *American Dredging Co.,* 53 N. J. L. 291, 21 Atl. 324; *Baird* v. *Reilly,* 35 C. C. A. 78, 92 Fed. 884; *Hassey* v. *Goger,* 112 N. Y. 614,

20 N. E. 556, 3 L. R. A. 559, 8 Am. St. 787; *Geoghegan* v. *Atlas Steamship Co.,* 22 N. Y. Supp. 749); that he is not bound to protect his servant against the mere transitory perils that the execution of the work occasions *(Whittaker* v. *Bent,* 167 Mass. 588, 46 N. E. 121; *Meehan* v. *Speirs Mfg. Co.,* 172 Mass. 375, 52 N. E. 518); and that he is not liable merely because a co-servant negligently handles appliances in such a way as to occasion injury to an employe *(Howard* v. *Denver, etc., R. Co.,* 26 Fed. 837; *St. Louis, etc., R. Co.* v. *Needham,* 11 C. C. A. 56, 63 Fed. 107, 25 L. R. A. 833; *Snow* v. *Housatonic R. Co.,* 8 Allen 441, 85 Am. Dec. 720; *Jones* v. *Granite Mills,* 126 Mass. 84, 30 Am. Rep. 661; *Baron* v. *Detroit, etc., Nav. Co.,* 91 Mich. 585, 52 N. W. 22).

In *Hodges* v. *Standard Wheel Co.,* 152 Ind. 680, it was said: "That appellee did not owe to appellant, as its employe, under the circumstances, the legal duty to support the rims in question by the hands of some one of its agents or representatives in the manner as Huey was doing just previous to the accident, is certainly evident. If it could be said to be charged with that duty, then every corporation engaged in the same line of business as it was, would in legal contemplation, be required to be present at all times and places at its factory when lumber, timber, or iron, or other heavy material of like character was being handled or moved by some of its employes, and by the hands of such agent or representatives prevent such iron, timber, or lumber, or other material connected therewith from slipping and falling upon said employes and thereby injuring them."

It has been said that the boundary line between the act of the master and the act of an employe is sometimes quite vague and shadowy. *Vitto* v. *Farley,* 44 N. Y. Supp. 1; *Hankins* v. *New York, etc., R. Co.,* 142 N. Y. 416, 37 N. E. 466, 25 L. R. A. 396, 40 Am. St. 616. We realize, as was in effect stated in *Island Coal Co.* v. *Swaggerty,* 159

Ind. 664, that the duty of the master is a continuing one, and that until the agent selected by the master acts up to the limit of the duty of the master to act the master's duty is not done. We further realize that any one of many circumstances may become the basis for the governing principle with regard to the extent of the master's duty, but after all we think that there is but one test by which the master's liability to a servant in such cases is to be determined, and that is the one already suggested—was it a master's duty that was neglected?

Granting that for some purposes the man Gratzer was a vice-principal, we are unable to perceive that he was acting in that capacity at the time he gave the alleged negligent order. The risk of injury from the negligence of a foreman is as much within the servant's assumption as is the risk that he may be injured by the act of any other co-servant. *Southern Ind. R. Co.* v. *Martin*, 160 Ind. 280; *Kerner* v. *Baltimore, etc., R. Co.*, 149 Ind. 21; *Central R. Co.* v. *Keegan*, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; *O'Brien* v. *American Dredging Co.*, 53 N. J. L. 291, 21 Atl. 324. An employe of the master may act in a dual capacity—as his representative and as his servant. *Southern Ind. R. Co.* v. *Martin, supra; Kerner* v. *Baltimore, etc., R. Co., supra; National Fertilizer Co.* v. *Travis*, 102 Tenn. 16, 49 S. W. 832; *Cumberland, etc., R. Co.* v. *State*, 44 Md. 283. The evidence in this case shows that Gratzer took part in the physical work of setting stone in the construction of the pier, and he was working as a servant when he gave the order looking to the setting of the stone which injured appellee.

To sum up the question as to the claim of a common law liability: The appellant was not bound to have a representative present at every moment to keep the place that appellee might chance to occupy safe, as against the possible negligence of a co-employe; the man Gratzer was engaged at the time of his alleged negligence as a servant in forward-

ing the work. Appellee and Gratzer were co-servants, and, as it is not alleged or proved that appellant did not exercise due care in the selection and retention of such foreman, it follows that appellant is not liable for his negligence in the particular instance.

The judgments of the Greene Circuit Court and the Appellate Court are reversed, and the former court is directed to award appellant a new trial.