PERRY, MATTHEWS, BUSKIRK STONE COMPANY *v.* FLETCHER, ADMINISTRATOR.

[No. 20,938.  Filed April 11, 1907.]

1. CONSTITUTIONAL LAW. — *Employers' Liability Act.*—Section 1 of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), so far as it affects other than railroad corporations, is unconstitutional.  p. 351.

2. PLEADING.—*Complaint.—Master and Servant.—Fellow Servants.*—A complaint alleging that a representative of the master negligently left certain stones in an upright position, by

reason of which decedent, who was ordered to remove articles near by, was killed, is bad, since, as to such work, such representative was merely a co-servant with decedent, and since it must be shown that a master's duty was neglected.   p. 351.

3.   PLEADING. — *Complaint.* — *Negligence.*—*Proximate Cause.*—A complaint by a servant against his master for negligence, must show that his injuries resulted proximately from the master's negligence.   p. 352.

From Greene Circuit Court; *Orion B. Harris,* Judge.

Action by Fred N. Fletcher, as administrator of the estate of Alonzo Watts, deceased, against the Perry, Matthews, Buskirk Stone Company.   From a judgment on a verdict for plaintiff for $6,500, defendant appeals.   *Reversed.*

*T. J. Brooks* and *W. F. Brooks,* for appellant.
*Cyrus E. Davis* and *Milton B. Hottel,* for appellee.

GILLETT, J.—Complaint in five paragraphs to recover for the alleged negligent killing of appellee's decedent, Alonzo Watts.   There was a verdict and judgment for appellee.

Error is assigned on the overruling of a demurrer to each paragraph of the complaint.

The first of said paragraphs may be regarded as, in many respects, a representative one, and therefore we shall give a summary of the facts therein averred relative to the accident.   At the time in question appellant, a corporation, was engaged in the business of sawing and planing stone, and in the yard and mill wherein said business was conducted there were a number of overhead tramways, on which appliances, known as "travelers," were operated in the handling of stone.   Frank Hess was the general superintendent of the yard, and he had general authority to give instructions, and to hire and discharge men.   Each traveler was in charge of an employe, who was known as a "head hooker," and under him was a man who was designated as the "second hooker,"   These positions were respectively

filled, in operating what was known as the "second traveler," by Ralph Smith and decedent. As head hooker, Smith was entrusted with the management and control of the movements of said traveler, and with the setting, bracing, propping, and staying of all stones moved by said traveler, and with authority to direct decedent. A short time before the accident, five slabs of stone, which had been sawed out of a block, were set down on edge in the yard, by means of an adjoining traveler, and were left in such manner that they would have been insecure, but for the fact that they leaned against a block of stone to the west. The slab adjoining said block, being an outer slab, had been sawed to a thin edge at the bottom, but, as it stood in the dirt and sand, this fact could not be discovered. Hess directed Smith to move, by means of the traveler, from the yard into the mill, one of said slabs of stone, which had a mark upon it, but Smith, misunderstanding the direction, brought in the block of stone to the west. When Hess observed this, he told Smith that he had moved the wrong stone, and directed him to put it in the place from whence he had taken it. Pursuant to this direction, Smith and decedent moved the block back until it was over its former location, when Smith discovered that some old saw blades were in the way, and he then directed decedent to move the same. It was in the performance of this task that decedent met his death, owing to the fact that the west slab, which had been left without support for the reason aforesaid, fell upon him. Smith is charged with negligence in failing to brace or fasten the slabs together, and in that connection it is alleged that "defendant, by and through said Smith, whose duty it was to make said stone safe and secure before leaving it, so that it would not fall or injure any of said employes, and who represented the defendant in that behalf, knew, or by proper inspection might have known, the dangerous and unsafe condition of said stone and the danger and hazard to which it exposed said employe, this

plaintiff's decedent, but directed him to go in and remove said saws." It is further charged that "Hess knew, or might have known, the hazard to which it exposed decedent to remove said saws, and that defendant, by and through its said agents and vice-principals who represented it in this behalf, said Smith and said Hess, knew all of the dangers, surroundings, conditions, and exposures connected with the going in by the plaintiff's decedent to remove said saws." There then follows a series of allegations as to what appellant knew or might have known concerning said slab. Decedent's want of knowledge is alleged, and it is then charged that his death was caused by the negligence of appellant in failing properly to brace or fasten said slabs, and in directing him into a place of danger, as alleged.

It is practically admitted by counsel for appellee that the second and third paragraphs of said complaint are based on the employers' liability act. Acts 1893,

1. p. 294, §1, §7083 Burns 1901. We shall hereafter refer to the objection made to the fourth and fifth paragraphs. The recent holding in *Bedford Quarries Co.* v. *Bough* (1907), *post,* 671, that the employers' liability act is unconstitutional, as applied to corporations other than railroads, at once disposes of the second and third paragraphs of complaint, and it appears to us that upon no theory, except that said law is valid, could it reasonably be contended that the first paragraph is sufficient. According to said paragraph, it was the duty of Smith to brace or fasten said stones together, and his was the negligent command which caused decedent to go into danger. The order of Hess to take the stone back was a proper one, and he had a right to suppose that Smith would do his duty. Nothing is pleaded which shows or tends to

2. show that the matter of maintaining these slabs of stone in an upright position was not a detail of the work which the master might not properly leave to be discharged by an employe. It is true that decedent was sub-

ject to the commands of Smith, but, notwithstanding his superior position, they were but co-servants after all, and, as his was the fault, the case is within the co-servant rule. It is essential to a cause of action that it should be shown that a master's duty was neglected. *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460; *Dill* v. *Marmon* (1905), 164 Ind. 507, 69 L. R. A. 163; *Bedford Quarries Co.* v. *Bough, supra.* We may add concerning the second and third paragraphs that the doctrines above stated condemn said paragraphs on common-law grounds.

It is contended by counsel for appellant that the fourth and fifth paragraphs fail to show a causal relation between the negligence and the result. This objection must prevail as to the fifth paragraph. As to the fourth paragraph, it may. be said that while it is not in terms charged that the slab of stone fell by reason of the defects alleged, yet it appears to us that the general allegation, in the latter part of the paragraph, relative to the negligence of the defendant, as set forth, being the cause of decedent's death, rendered the paragraph sufficient as against said objection.

Judgment reversed, with direction to sustain the demurrer to each paragraph of the complaint, except the fourth.